## SCOTT et al. v. SCRUGGS.

(Circuit Court of Appeals, Fifth Circuit. February 27, 1894.)

### No. 168.

PRINCIPAL AND SURETY—DISCHARGE OF SURETY.

Where the holder of a note extends it at the request of one maker, and without the knowledge or consent of the other, knowing at the time that the latter maker merely signed the note as surety, the latter is released from his obligation, although the holder did not know of the relation between the two makers at the time the note was given.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Alabama.

Action by Thomas M. Scruggs against John F. Scott and H. S. Freeman upon two promissory notes. Plaintiff obtained judgment. Defendants bring error.

W. R. Francis, for plaintiffs in error.

John C. Eyster, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge. This action was brought by Thomas M. Scruggs, the defendant in error, against John F. Scott and H. S. Freeman, the plaintiffs in error, to recover the sum of $2,601.65, the amount of two promissory notes made by the defendants, Scott and Freeman, dated the 4th day of January, 1890, and payable six months after date, to the order of the plaintiff, Scruggs, at the First National Bank of Decatur, Ala. The complaint also contains a count for the same amount on an account stated on the 4th day of January, 1890, and a count for money loaned on the same day. The defendant Scott pleaded the general issue. The defendant Freeman, in answer to the whole complaint, in addition to "Never was indebted," pleaded that he signed the notes in suit simply as a surety for the defendant Scott on a loan made to him at that time by the plaintiff, Scruggs; that this fact was well known to the plaintiff; that thereafter, and about the time of maturity of the notes in suit, the plaintiff, Scruggs, by an agreement made between him and the defendant Scott, without the knowledge or consent of the defendant Freeman, for a valuable consideration, extended the time of payment of the said notes, and the repayment of the said loan, for a definite time; and that the defendant Freeman was thereby discharged from liability as such surety. Issue was joined on this answer, and the case was tried on the 29th day of April, 1893, at the April term of the circuit court, the defendant Freeman alone defending the action. The court gave the general charge in favor of the plaintiff, and judgment was rendered against both of the defendants for the sum of $3,191.02. From this judgment the writ of error is taken.

An action had been brought before this, on those identical notes, by the same plaintiff, Scruggs, against the same defendants, on the 21st day of March, 1891, in the circuit court of Morgan county, in the state of Alabama. The defendant Freeman interposed the

same defense as in the present action. On the trial the court gave the general charge in favor of the plaintiff, and judgment was rendered against both of the defendants. An appeal was taken from this judgment to the supreme court of Alabama. The supreme court reversed the judgment, and remanded the case to the Morgan county circuit court for a new trial. Scott v. Scruggs, 95 Ala. 383, 11 South. 215. At the November term, 1892, of the Morgan county circuit court, when the case was called for a new trial, the plaintiff took a voluntary nonsuit. Immediately thereafter, on December 20, 1892, the present action was begun.

The undisputed facts are that on May 23, 1889, Scott (one of the defendants) applied to the defendant in error, Scruggs, for a loan of $3,000. Scruggs told him that he had some money to lend, and asked Scott what kind of security he could give him for it. Scott answered, according to Scruggs, that he could give him "a note signed by himself and H. S. Freeman," or "his note with H. S. Freeman on it." Scruggs agreed to let Scott have the money on these terms, and drew up two notes,—one for $2,000, and the other for $1,000. Scott signed these notes in Scruggs' office, and then took them out to get Freeman's signature. He brought them back, signed by Freeman, and delivered them to Scruggs, who gave him the money (first deducting the interest) in two checks, drawn payable to the order of Scott, at his request. Freeman signed these notes at his office, in Decatur. He was not present when the notes were delivered to Scruggs. He never had any conversation with Scruggs about the loan. The loan was not made for his benefit, and he did not, in any way, get any part of the money. A short time before these notes became due, there were some communications between Scott and Scruggs in reference to their payment. On the morning of January 4, 1890,—the day on which the notes were due,—Scott came to the office of the plaintiff, and told him that he could not pay the notes. Scruggs asked him how much he could pay. Scott said that he could pay $500 in cash, and would renew the notes for the balance, and Scruggs agreed to this. Scott then wanted the notes drawn up so that he could take them out, and get Freeman's signature, as he had done before. Scruggs refused to do this, and insisted that Freeman should come to his office, and sign the notes there, in his presence. Scott then went out to find Freeman, but could not find him at first, and finally made an appointment with Scruggs to bring Freeman to his office at 4 o'clock that afternoon. At that time, Scott and Freeman came to Scruggs' office. Scruggs asked Scott whether he wanted the interest taken out of the $500, or added to the notes, and Scott said he wanted it added to the notes. Scruggs then told Mr. Percival to draw up the notes, adding the interest, which he did; and Scott and Freeman signed these notes,—the notes in suit. Scott then delivered the new notes to Scruggs, and paid him the $500 in cash; and Scruggs handed to Scott the old notes, of May 23, 1889, from which Scott then tore the signatures. Scott furnished the whole of the $500 paid to Scruggs on January 4, 1890, and Freeman did not furnish any part

of it. A short time before the notes in suit fell due,—in July, 1890,—there was a correspondence between Scott and Scruggs as to an extension of the time of payment. As the result of this correspondence, Scott paid Scruggs $104.06 for six months' interest on the notes, in advance; and Scruggs, in consideration of this payment, agreed to extend the time of payment for six months, to January 4–7, 1891, and indorsed the payment of the interest on the notes. All of this negotiation was by letter, and there was no personal communication between the parties about it. Freeman did not know anything about this extension of the time of payment, nor did he consent to it in any way whatever. He did not furnish any part of the $104.06 paid by Scott to Scruggs. Freeman never heard anything about the notes in suit, after they were executed, and says he thought they were paid, until about a week before the beginning of the suit on them by the plaintiff in the circuit court of Morgan county, Ala., on March 21, 1891. In addition to the foregoing undisputed facts, there was uncontradicted evidence on the trial strongly tending to show that Scruggs, the defendant in error, knew from the beginning, and continuously thereafter, that the relation between Scott and Freeman in regard to the loan made to Scott, and in regard to the notes sued on, was that of principal and surety. On the trial, and over the objections of the defendant Freeman (plaintiff in error here), the court charged the jury as follows:

"It is not important to inquire what the relation or understanding was between defendants, Scott and Freeman,—as to whether they were both makers, or that one was maker, and the other surety,—unless it is shown that such knowledge and understanding was brought home to Scruggs, the other party to the loan, at the time the notes were accepted by him for the loan made, which was the consideration of the notes. The notes themselves are in evidence, and, as they are written, the defendants are makers of the notes, but that is not conclusive against defendant Freeman. But the burden is upon him to show that the notes are not the true expression and understanding between Scott and Scruggs at the time the notes were accepted by him (Scruggs) in consideration of the loan. * * * If you shall find that the plea of surety by the defendant Freeman is sustained by the proof, and that there was a mere renewal of the old notes by the giving of the new, then you will find the plea sustained, and your verdict will be for defendant Freeman on the notes in suit. If, however, you shall find that the plaintiff accepted the original notes for the loan without the knowledge that defendant Freeman was upon the notes only as a surety for Scott, your verdict must be for plaintiff, against both of the defendants. And even if you shall find that the defendant Freeman was upon the first notes only as surety, and that Scruggs accepted them for the loan, knowing that fact, still, if you find, what took place between the parties when the new notes were given, that it was the intention of the parties that the old notes should be paid and discharged by the giving of the new notes, then your verdict will be for the plaintiff, against both defendants. There is another view of the case to which I call the attention of the jury: If the contention of the defendant Freeman that the notes sued on are mere renewals of the old notes, which were not paid and canceled by the giving of the new notes, under the proof and instruction as to the law which have just been given, then the old notes, which are here in evidence in this case, being unpaid, and there being here a claim upon account stated in plaintiff's complaint, the old notes are competent evidence in support of such claim on account stated. It is not claimed that there is any such infirmity in the old notes as is set up against the notes in suit; that is, that there was any extension of the time of their payment without the knowledge and

consent of the defendant Freeman. And, therefore, if the jury, under the proof and instructions given, find for the defendant Freeman on the notes in suit, still, if the jury find that the notes are not paid, then their verdict may be upon the old notes for the amount found to be due, against both of defendants. And, if this view of the subject is correct, it results in the general charge that, if the jury believe all the evidence, they will find for the plaintiff, against both defendants."

The record also shows that at the request of the plaintiff (defendant in error here), and against the objections of the defendant Freeman (plaintiff in error here), the court charged the jury as follows:

"In this case the plaintiff relies on counts in his complaint on the two notes of the defendants dated January 4, 1890, and also on a count in his complaint upon an account stated. The defendant Freeman pleads that he signed the first two notes that are in evidence, of date May 23, 1889, as a surety, and that the last two notes are mere renewals; that they were not received in payment of the first two notes; and that no consideration moved to him (Freeman) as to the last two notes, and that he is only a surety on them; and that, by plaintiff's giving time to the defendant, he (Freeman) is discharged from liability on these notes. If this position be correct, and proved to your satisfaction, and if it be also proved that Scruggs had knowledge of the fact that Freeman was only a surety, these facts would discharge Freeman, as surety, upon the two notes last given. But, if these facts were true, then the first two notes, of date May 23, 1889, are unpaid; and the plaintiff, on the count in his complaint upon the stated account, would be entitled to recover the amount of the first two notes, with interest thereon, less the amounts shown to be paid to Scruggs since the date of the first two notes, and your verdict, for this sum, would be against both defendants. If the jury believe the evidence, their verdict should be for the plaintiff, against both of the defendants."

Also, that the defendant Freeman (plaintiff in error here) requested the court to charge as follows:

"If the jury find that the defendant Freeman signed the notes, which are the foundation of this suit, solely as surety for the defendant Scott, and that this fact was known to the plaintiff at the time of the making of the notes; and if the jury also find that the plaintiff, without the knowledge or consent of the defendant Freeman, by an agreement between him and the defendant Scott, for a valuable consideration, extended the time of the payment of the said notes for a definite time,—then the defendant Freeman is discharged as a surety, and the verdict must be in favor of the defendant Freeman,"

—Which was refused.

In our opinion, the trial court took an erroneous view of the law of the case. The affirmative charge and the other instructions given should have been refused, and the charge asked for by the defendant Freeman (plaintiff in error here), as given above, with other charges requested by him, not necessary to repeat, should have been given. Whether the notes sued on were mere renewals of the notes given for the original loan, as we think they were (see King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465), or whether a novation took place,—the original notes being thus taken up, as paid or otherwise satisfied,—is immaterial. It is also immaterial at what time the creditor, Scruggs, was informed that Scott was the principal, and Freeman the surety, provided such relationship actually existed, and the information was had or received by Scruggs prior to the execution of the contract between him and

Scott, without the consent of Freeman, for the extension of the time of payment. In Insurance Co. v. Hanford, 143 U. S. 187–191, 12 Sup. Ct. 437, the supreme court of the United States, by Mr. Justice Gray, declared the law directly applicable, and which controls this case, as follows:

"The case is thus brought within the well-settled and familiar rule that if a creditor, by positive contract with the principal debtor, and without the consent of the surety, extends the time of payment by the principal debtor, he thereby discharges the surety, because the creditor, by so giving time to the principal, puts it out of the power of the surety to consider whether he will have recourse to his remedy against the principal, and because the surety cannot have the same remedy against the principal as he would have had under the original contract; and it is for the surety, alone, to judge whether his position is altered for the worse. 1 Spence, Eq. Jur. 638; Samuell v. Howarth, 3 Mer. 272; Miller v. Stewart, 9 Wheat. 680, 703. The rule applies whenever the creditor gives time to the principal, knowing of the relation of principal and surety, although he did not know of that relation at the time of the original contract (Ewin v. Lancaster, 6 Best & S. 571; Corporation v. Overend, 7 Ch. App. 142, and L. R. 7 H. L. 348; Wheat v. Kendall, 6 N. H. 504; Guild v. Butler, 127 Mass. 386), or even if that relation has been created since that time (Oakeley v. Pasheller, 4 Clark & F. 207, 233, 10 Bligh [N. S.] 548, 590; Colgrove v. Tallman, 67 N. Y. 95; Smith v. Shelden, 35 Mich. 42)."

We are unable to see any force in the contention that as the plaintiff has declared on the common counts, as well as specially upon the notes, although the defense of the surety, Freeman, may be good because of the contract extending the time of payment, yet, as he contends that the original notes given for the loan were simply renewed by giving the notes sued on, therefore the plaintiff ·below (defendant in error here) can recover the amount of the old notes as upon account stated. There was only one loan, and only one debt. On that debt, Freeman was surety. If, by a contract between the creditor and the principal, without his knowledge, he was discharged as surety, he was discharged for the whole debt. The argument offered in support of this contention would be equally good if Freeman's defense had been payment, or even that he never signed the renewal notes sued on. The authorities cited by defendant in error in support of this contention are not all applicable to the case in hand. The judgment of the circuit court should be reversed, and the cause remanded, with instructions to grant a new trial, and otherwise proceed as the law of the case may require, and in conformity with the views herein expressed; and it is so ordered.