JACKSONVILLE, M. & P. RY. & NAV. CO. et al. v. HOOPER et al.

(Circuit Court of Appeals, Fifth Circuit. February 15, 1898.)

No. 606.

APPEAL — RELEASE OF SURETY ON SUPERSEDEAS BOND — AGREEMENT FOR SETTLEMENT.

Pending proceedings to review a judgment against a railroad company, it paid to the plaintiff a sum in cash, and delivered certain bonds in escrow, on an agreement that, if the bonds should advance in market value to par within a year, they should be accepted by the plaintiff in full satisfaction of the judgment. They failed to reach the stipulated value, and were tendered back. The proceedings in error were not dismissed, but resulted, after the expiration of the year, in an affirmance. Held, that such transaction did not discharge the sureties on defendant's supersedeas bond.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of Florida.

This was an action by Mary J. Hooper and Henry H. Hooper, her husband, and William F. Porter, for the use of Mary J. Hooper, against the Jacksonville, Mayport & Pablo Railway & Navigation Company, Mary Wallace, and John N. C. Stockton, on a supersedeas bond. There was judgment for plaintiffs, and defendants bring error.

JACKSONVILLE, M. & P. RY. & NAV. CO. V. HOOPER.    621

A. W. Cockrell, A. W. Cockrell, Jr., and R. S. Cockrell, for plaintiffs in error.

James R. Challen, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge.   The defendants in error summoned the plaintiffs in error to respond in an action of debt on bond.   From the view that we take of the case it is not necessary to make any preliminary statement of the pleadings.   The case proceeded in the usual manner until it was ready for trial.   The parties, by written stipulation duly filed, submitted the cause to the court without a jury.   Thereupon, after hearing the evidence and the argument of counsel, and duly considering the same, the court found as matters of fact:

"(1) That there was a judgment given and entered in this court on May 8, 1891, for $6,799, and $125 costs, in favor of the plaintiff and against the J., M. & P. Ry. & N. Co., defendant herein.

"(2) That a writ of error was taken from said judgment to the supreme court, and such proceedings had thereon that the said judgment was affirmed [16 Sup. Ct. 379], and a mandate issued thereupon on the 14th day of February, 1896, to this court.

"(3) That in suing out said writ of error a supersedeas bond was made and filed herein, with the defendant the J., M. & P. Ry. & N. Co., principal, and the defendants Mary Wallace and J. N. C. Stockton, sureties. That on the 7th of April, 1893, there was an agreement had by and between the plaintiffs, by their attorney, James R. Challen, and the president of the said defendant company, Archer Harmon, by which $600 in money was to be paid said J. R. Challen, and six one thousand dollar bonds of said company were to be delivered to said J. R. Challen, attorney, to be held in escrow, and a satisfaction piece and a praecipe to dismiss said suit was to be signed by J. R. Challen. That said satisfaction piece and praecipe for dismissal of the suit were issued and signed by said J. R. Challen, and a written agreement was signed by Archer Harmon, president of said company, and given said J. R. Challen, providing that such cancellation of the judgment should not be entered until the defendant's road was fully completed to South Jacksonville Ferry, and $75,000 of the bonds of the company were destroyed, and such combination made or guaranty given as should bring the remaining bonds to par in the market; and if that should not be done within one year, the cancellation piece should be returned upon his surrender of the six $1,000 bonds left in escrow, and the judgment should remain in force as if the negotiation for settlement had never been made. If the above was complied with, the cancellation should become absolute, but if entered without compliance with said conditions the same should be void, and the judgment not canceled. That such agreement was made by the president of the defendant company, without notice to or knowledge of the sureties upon said supersedeas bond, or knowledge of the secretary and treasurer of said company, who paid said $600 and delivered said bonds upon the presentation of the satisfaction price, and without the authority of the company.   That said satisfaction piece and praecipe to dismiss was presented to Stockton, secretary and treasurer of the company, who understood that it was final settlement of the judgment, and with that understanding paid the $600 and delivered the six one thousand dollar bonds.   That said cash would not have been paid nor bonds delivered by the said secretary and treasurer, had he known of the conditions of said agreement made with the president of the company, but he supposed and considered that said agreement was a final settlement.   That the conditions of agreement which were to increase the value of the bonds not being complied with, the bonds were tendered by said Challen to said Harmon, president of said company, who declined to receive them, and they were filed by the directions of said Harmon in this court in a suit pending against said company, as being held in escrow by Challen.

That at the time the plaintiffs' attorney made and issued the satisfaction piece and præcipe to dismiss said suit it was not intended by him to be an unconditional satisfaction and settlement of the suit, but a conditional one, depending upon the acts of the defendant company, and this was known by Harmon, the president of the company, with whom the agreement was made, but not by Stockton, secretary and treasurer, who paid the $600 and delivered the bonds. That the bonds proved to be of very little, if of any, value. That the $600 was not paid on account of or as a matter of interest, but on account of the judgment. And the court finds, as a matter of law, that the proposed agreement and conditional settlement was not a valid final settlement and payment or satisfaction thereof; that, notwithstanding such agreement and conditional settlement between the plaintiffs and the principal upon said bond, the sureties were not harmed or injured thereby, and are not discharged therefrom; that the payment of the six hundred dollars is not to be controlled by the rules for the computation of interest in partial payments upon promissory notes, but that the six hundred dollars, with interest from the time of its payment, should be deducted from the amount of the judgment. And the court further finds, as a matter of law and fact, that the defendants are jointly and severally indebted to the plaintiffs herein in the sum of $9,238.41, together with all costs to be hereinafter taxed and allowed, for which they should have judgment."

On which findings of fact the court adjudged that the plaintiffs (defendants in error) are entitled to recover the sum of $9,238.41 from the defendant (below) Jacksonville, Mayport & Pablo Railway & Navigation Company, as principal, and the defendants Mary Wallace and J. N. C. Stockton, as sureties, and also the further sum of $129.45, costs of this suit, to be taxed, for which said sums judgment and execution are awarded. Thereupon the defendants (below) sued out this writ of error, and in their assignment of errors say:

"(1) Upon the findings of fact herein, the judgment, on the issues raised by the pleadings, should have been for the defendants. (2) Upon the findings of fact herein, the said Stockton and Wallace were severally discharged as sureties on the supersedeas bond sued upon. (3) The acceptance by the said plaintiffs of the $600 in cash, and the acceptance of six bonds, of the par value of $1,000 each, in escrow, conditioned as alleged, to be kept at par for a definite space of time, was a discharge of the said sureties. (4) Upon the findings of fact herein, the remedy of the plaintiffs was an action against the defendant railway company for breach of the alleged contract to maintain the said bonds at par. (5) That payment of a part of the judgment in cash, and other consideration, such as the delivery of six bonds, of the par value of $1,000 each, was a sufficient payment of a judgment pending a writ of error already sued out and then not called for hearing in the appellate court. (6) The findings of fact by the court make out no other or different cause of action than that pleaded by way of replication to the tenth and eleventh pleas as amended, held insufficient on demurrer."

It seems manifest to a majority of this court that the errors assigned raise no question on the rulings of the circuit court during the progress of the trial, and that the questions for consideration are: (1) Are the pleadings sufficient to support the judgment? And (2) do the findings of fact support the judgment?

It seems to us that the first question is not seriously contested, or susceptible of serious contest. The declaration counts with apt words on the bond, and shows substantially, as it appears in the court's finding of fact, the amount of the judgment which it was executed to supersede pending the writ of error to the supreme court.

The serious contention, touching the question of the findings of fact supporting the judgment, relates to the effect that should be given to the agreement, shown to have been executed on the 7th day of April, 1893, as presented in the third finding of the circuit court. In the

oral argument of the plaintiffs in error there appeared an effort to treat the negotiations had on that day as resulting in two agreements, instead of one.   It is manifest, however, from the language in the defendants' plea and in the finding of the court as to the facts, that the papers executed by the plaintiffs' attorney and the paper executed by the president of the defendant railway corporation constitute one agreement.   The conduct of the defendants in error subsequent to the 7th of April, 1893, manifests this as fully as the letter of the papers.   It is suggested, and urged with apparent seriousness, that the negotiations effected a contract upon the part of the defendants in error to forbear in the prosecution of their claim on the judgment for the period of one year.   We must bear in mind that the defendants in error were at that time defendants in error in the supreme court, and that the burden of the prosecution of the litigation between the parties rested upon the plaintiffs in error in that court, who are now plaintiffs in error in this court.   If the agreement made on the 7th of April, 1893, had the effect, or could have been used to effect what the plaintiffs in error here claim that it did effect, it is difficult to see why the secretary and treasurer, Stockton, did not immediately cause to be dismissed the writ of error in the supreme court, and, with the "satisfaction piece and præcipe to dismiss" in hand, insist upon the dismissal of the plaintiffs' case or satisfaction of the judgment in the circuit court.   It is a matter of common knowledge—certainly, of common judicial knowledge—that at the time the writ of error was taken, to review and reverse the judgment to supersede which the writ of error bond here declared on was executed, the docket of the supreme court was so clogged with accumulation of causes that the parties could not expect to procure a hearing in ordinary cases earlier than about the expiration of four years from the time the writ of error was docketed in the supreme court.   And it appears that in point of fact that writ of error was not heard and determined until after the expiration of the period of four years from the time it was sued out.   Taking into consideration this situation of the parties, and their respective conduct, we repeat, it is difficult to see that the negotiations had on the 7th of April, 1893, had any tendency to stay the diligence of the defendants in error here in the prosecution of their demands against the plaintiffs in error.   It will be observed that Stockton's action in this matter was not taken as one of the sureties on the writ of error bond, but as secretary and treasurer of the corporation.

Some stress is laid upon the fact that these transactions were had with the president of the company, without the authority and without the knowledge of the company.   It is equally apparent that Stockton, so far as he acted in connection with the delivery of the bonds and paying the $600, acted without the authority of the company. And it might be interesting to consider whether, if the company was not bound by the negotiations that took place, was the other party bound?   Upon the whole case, the majority of this court concur with the judge of the circuit court in his conclusion that the defendants are jointly and severally indebted to the plaintiffs in the sum for which the circuit court rendered judgment against them.   Therefore the judgment of the circuit court is affirmed.

PARDEE, Circuit Judge (dissenting). According to the facts as found by the trial judge, there was an agreement made between the principals, looking to a settlement of the judgment to supersede which John N. C. Stockton and Mary Wallace were sureties. To carry out the terms of this agreement a contract was made between the principals for a delay of one year, for which, and to secure which, bonds were deposited and money actually paid. In my judgment this contract for delay released the sureties, unless having knowledge of the same they consented thereto, and this irrespective of damage vel non resulting from the delay granted. The following authorities are sufficient to sustain this proposition: Miller v. Stewart, 9 Wheat. 702; Martin v. Thomas, 24 How. 315, 317; Reese v. U. S., 9 Wall. 21; Scott v. Scruggs, 9 C. C. A. 246, 60 Fed. 721; Earnshaw v. Boyer, 60 Fed. 528; Gato v. Warrington, 37 Fla. 542, 19 South. 883. Whatever inferences may be drawn from the findings of fact as to the knowledge and consent of Stockton, the findings are clear that the agreement was made without notice to, and without the knowledge of, Mary Wallace.