## MISSISSIPPI VALLEY TRUST CO. v. BUSSEY.

### No. 5993.

Circuit Court of Appeals, Fifth Circuit.

May 20, 1931.

Robert W. Shackleford, of Tampa, Fla., and J. B. Daggett, of Marianna, Ark., for appellant.

McKinney Barton and Sam H. Mann, Jr., both of St. Petersburg, Fla. (McKinney Barton, Sam H. Mann, Jr., and Bussey, Mann & Barton, all of St. Petersburg, Fla., on the brief), for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellant, the owner of notes aggregating $44,000 made on April 24, 1919, by T. J. Hannah and Ida B. Hannah to William M. Fitch, and secured by the makers' mortgage or deed of trust on land in St. Francis county, Ark., which notes and mortgage or deed of trust were transferred to appellant, brought this action at law against the appellee, who under the terms of a warranty deed to said land made to him by T. J. Hannah and Ida B. Hannah on May 14, 1919, as-

sumed the payment of the above-mentioned notes, and also the notes secured by a second mortgage or deed of trust of the same land, to recover the balance on the first-mentioned notes remaining unpaid after the foreclosure of the mortgage securing them and the application on the debt evidenced by those notes of the proceeds of the sale of the mortgaged land. By his sixth plea the appellee—after alleging that C. E. Turley, to whom the mortgaged land was conveyed in September, 1919, assumed the indebtedness mentioned in said two mortgages or deeds of trust; that W. C. Bonner, H. W. Bonner, B. H. Bonner, and J. C. Bonner, as a partnership of J. H. Bonner & Sons, to whom the mortgaged land was conveyed on April 30, 1921, assumed and promised to pay the indebtedness described in the two above-mentioned mortgages or deeds of trust—alleged:

"That on or about July 27, 1923, there was due and owing to the plaintiff upon the debt and mortgages described in the declaration, the interest payments which had become due on April 24, 1923, aggregating approximately $3600.00, and that on or about said date, the plaintiff, Mississippi Valley Trust Company, made an agreement with J. H. Bonner & Sons under the terms of which the payment of said interest was extended, so that the same should become due and payable in three installments of $1200.00 each, due respectively on September 1, 1923, October 1, 1923, and November 1, 1923, and waived the default in the payment of the indebtedness described in the said mortgage trust deeds. That in consideration of said extension agreement and waiver, the said J. H. Bonner & Sons executed to S. H. Mann as Trustee for the Mississippi Valley Trust Company a certain chattel mortgage covering 38 head of mules, 7 head of horses, all farming utensils, all crops of cotton and corn and other produce, said property being located North of Heth, St. Francis County, Arkansas, on the lands of the said J. H. Bonner & Sons, and the said chattel mortgage securing three notes for $3600.00, and the debt held by Mississippi Valley Trust Company, and which was a lien on the lands of J. H. Bonner & Sons. A certified copy of said chattel trust deed is attached hereto and made a part hereof and marked 'Defendant's Exhibit 4.'

"The extension hereinabove referred to was given and the agreement for extension set out above was made without the knowledge or consent of this defendant, and the defendant states that by reason of the facts and things just above alleged, he has been released from the indebtedness sued upon."

The appellant filed a demurrer to the sixth plea. That demurrer was overruled. By replication the allegations of that plea were put in issue. Upon the conclusion of the evidence the court directed a verdict in favor of the defendant. Errors are assigned on the overruling of the demurrer to the sixth plea, on the court's ruling on objections to evidence mentioned below, and on the action of the court in directing a verdict in favor of the defendant.

The allegations of the sixth plea do not show that the appellant, at the time it made the alleged agreement extending the time of payment of interest, had knowledge or notice that J. H. Bonner & Sons had assumed the indebtedness secured by the two above-mentioned mortgages or by either of those mortgages. Those allegations are consistent with the appellant, when that agreement was made, having been without any knowledge or information as to what, if any, relation to the mortgaged land J. H. Bonner & Sons had. By assuming the debt secured by the mortgage, each succeeding grantee of the mortgaged land became directly and primarily liable to the mortgagee or his assignee for the debt evidenced by the notes aggregating $40,000, and the relation of J. H. Bonner & Sons, after they became so liable, towards the mortgagor, or appellant, as well as between themselves, was that of principal to surety for the payment of the debt evidenced by those notes, with a result that if thereafter the appellant, while being the owner of those notes and with knowledge of the relation of principal and surety between J. H. Bonner & Sons and the appellee, and without the consent of the latter, extended the time of payment of the principal or interest of the debt evidenced by those notes, thereby it discharged the surety, the appellee. This is so because the creditor, by so giving time to the principal debtor, puts it out of the power of the surety to have the same remedy he would have had but for such extension. Union Mutual Life Ins. Co. v. Hanford, 143 U. S. 187, 12 S. Ct. 437, 36 L. Ed. 118; Slottow v. Hull Inv. Co. (Fla.) 129 So. 577. Unless the creditor, the appellant, knew or was informed, at the time it agreed with one other than the mortgagors for an extension of the time of payment of the debt secured by the mortgage, of the relation of principal and surety between that person and the appellee, the latter was not discharged by the

making of such agreement. This is in accordance with the general rule that, in order for a surety to be discharged by the acts of the creditor or obligee, the latter, when he becomes a party to conduct relied on as effecting a discharge, must have knowledge or notice of the existence of the relation of principal and surety. Pratt v. Conway, 148 Mo. 291, 49 S. W. 1028, 71 Am. St. Rep. 602; Insley v. Webb, 41 A. L. R. 274, 302, note; Wilson v. Foot, 11 Metc. (Mass.) 285; McCloskey v. Indianapolis Mfg., etc., Union, 67 Ind. 86, 33 Am. Rep. 76; Mullendore v. Wertz, 75 Ind. 431, 39 Am. Rep. 155; Scott v. Scruggs (C. C. A.) 60 F. 721; 50 C. J. 111. The fact that J. H. Bonner & Sons arranged for an extension of the time of payment of the debt secured by the mortgage was consistent with their being in no way obligated to pay that debt. One might be interested in procuring such extension who had bought the property subject to the mortgage, without obligating himself to pay the debt thereby secured; or if he was a general creditor of the mortgagors, he might have had a substantial interest in keeping his debtors from losing their equity in the mortgaged property. Shepherd v. May, 115 U. S. 505, 6 S. Ct. 119, 29 L. Ed. 456. A creditor's agreement to extend the time of payment of the principal or interest of the debt owing to him may be brought about by one who in no way is obligated for the payment of that debt, and, in procuring such extension, is influenced only by a benevolent desire to postpone the enforcement of it against the debtor. By reason of the allegations of the sixth plea failing to show that appellant, at the time it agreed to the alleged extension, had knowledge or notice of the existence of the relation of principal and surety between J. H. Bonner & Sons and the mortgagors or the appellee, that plea failed to show that the alleged extension had the effect of discharging the mortgagors or their immediate grantee, the appellee.

Evidence adduced in the trial showed the following: T. J. Hannah and Ida B. Hannah executed two deeds of trust, both dated April 20, 1919, and covering the same land, one, called the first mortgage or deed of trust, being given to secure the debt evidenced by the above-mentioned notes aggregating $44,000, and the other, called the second deed of trust, being given to secure notes evidencing an indebtedness other than that evidenced by the notes aggregating $44,000. The appellant became the owner of the notes aggregating $44,000, and also of some of the notes secured by the second deed of trust. By the terms of the second deed of trust it was to stand as security, not only for the debt evidenced by the notes other than those evidencing the indebtedness aggregating $44,000, but for all sums advanced for the payment of taxes, liens, insurance, or interest on the debt secured by the first deed of trust. On April 23, 1923, a member of the firm of J. H. Bonner & Sons saw an official of the appellant with reference to the principal and interest that would be due on the first and second mortgages or deeds of trust on April 24, 1923, and stated that they could not pay that amount the next day, but could do so inside of sixty days. Thereupon that official stated that appellant would make no formal extension of the amount due, but that if the delinquent taxes on the mortgaged land were promptly paid appellant would take up from investors the interest coupons due April 24, 1923, and carry same until June 24, 1923. This was agreed to by the member of the firm of J. H. Bonner & Sons. That firm did not comply with that agreement. To secure the sum which was due April 24, 1923, which J. H. Bonner & Sons had agreed to pay as above stated, they, J. H. Bonner & Sons, on or about July 27, 1923, executed three notes, payable, respectively, September 1, 1923, October 1, 1923, and November 21, 1923, and a chattel mortgage on live stock and farm implements and tools, to secure those notes. At the time of the just-mentioned transaction appellant told J. H. Bonner & Sons that it would wait until the collateral notes matured, and would not foreclose if those notes were promptly paid at maturity, and would release the chattel mortgage when the notes secured thereby were paid. That was the only agreement made by the appellant relative to interest on the debts secured by the first and second mortgages being paid on any other date than April 24, 1923. The appellant offered in evidence testimony to the effect that during the year 1919 appellant sold and transferred to others all of the above-mentioned notes aggregating $44,000, and secured by the first deed of trust, that those notes were repurchased by the appellant more than a year after the execution of the above-mentioned chattel mortgage, and that appellant paid to those who were the owners and holders of those notes on April 24, 1923, the interest due thereon on that date. The court sustained objections of the appellee to that evidence. The evidence so offered and rejected tended to prove that at the time of the transaction alleged in the sixth plea nothing was owing to

the appellant on the above-mentioned notes aggregating $44,000, as appellant was not then the owner or holder of any of those notes, and that no agreement for the extension of the time of payment of the principal or interest of the debt evidenced by those notes was made by the owner thereof. That evidence negatived the truth of material allegations of the sixth plea. The allegations of that plea having been put in issue, evidence tending to disprove material allegations of it was admissible. The rejected evidence, in connection with other evidence adduced, tended to prove that the extension agreement set up by the sixth plea had reference to a debt other than that evidenced by the above mentioned notes aggregating $44,000, and sued on in this case, which were not owned by appellant when that agreement was entered into, that the debt the time of payment of which was extended by that agreement was one secured by the second deed of trust, no part of which debt was evidenced by the notes aggregating $44,000, or any of those notes, and that none of the owners of those notes at the time the alleged agreement was made was a party to any extension agreement. We conclude that the court erred in excluding the evidence under consideration.

Because of the above-mentioned errors, the judgment is reversed, and the cause is remanded, with a direction that a new trial be granted.

Reversed.