MARY A. MATTAIR, ET AL., APPELLANTS, VS. CHAS. P. CARD, ADMINISTRATOR, APPELLEE.

1. A married woman may, under the laws of this State, charge her sep-
arate property by mortgage to secure a note signed by herself and
her husband ; and she may charge her separate property to secure
any indetedness contracted by her for the benefit of such property
or estate.

2. A decree in a foreclosure suit that the defendants, mortgagors, (hus-
band and wife) pay the amount due within a certain time, and in
default thereof, that the mortgaged property be sold, &c., is not a
personal judgment or decree against her for money.

3. A decree against a mortgagor for any deficiency of money due after
deducting the amount realized on the sale, may be entered under
the general prayer of the bill.' See Equity Rule 89, which author-
izes such decree and execution 'therefor.

4. A contract entered into by a person so intoxicated as that he is in-
capable of transacting business intelligently, is voidable by such
person.

5. When a married woman has been induced by artifice to purchase
property at a price far beyond its value, and her husband joined
her in giving a promissory note and in executing a mortgage on
the same property and other of her 'separate property, the husband
being intoxicated and unfit to transact business at the time of exe-
cuting the securities, though the circumstances may have been
such as to justify a rescission of the contract by a decree in equity,
yet the parties cannot by *answer* set up such matters as a defence
in a suit to foreclose the mortgage.

6. The remedy of such mortgagors is to file a bill or a cross-bill to re-
scind the entire agreement after tendering a reconveyance and
placing the other party in *statu quo*.

Decree affirmed with directions that the court order the sale of a cer-
tain portion of the premises before selling the other part thereof.
if the defendants so desire.

Appeal from the Circuit Court for Duval county.

Card, administrator of the estate of Alexander, filed a
bill to foreclose a mortgage executed by appellants on the
15th March, 1878, to Alexander to secure a note of $3,000

made by them, which mortgage covered lot 2 in square 22 in Jacksonville. The note bore interest at twelve per cent., payable semi-annually. Alexander died in March, 1879. The first six months' interest was paid by appellants when due. The foreclosure suit was commenced in September, 1879.

The answer of Mrs. Mattair shows that the note and mortgage were given to secure the purchase-money of the west half of lot 2 in block 22, she at the time owning the east half of lot 2 and resided thereon. She says that she gave the note and mortgage upon the assurance by Alexander that in a very short time a relative of his would come on who would purchase the whole lot for eleven thousand dollars, thus leaving her $8,000 for her property in the east half, and relieve her of the debt, and that if his relative did not so come he, Alexander, would buy the whole property as soon as he could arrange some matters in hand. That it was by reason of this assurance that she consented to buy of him the west half of the lot, and but for that promise she would not have purchased and given the note and mortgage. She further says that the said west half so purchased at $3,000 was not and is not worth that sum, and she has been at all times willing to convey the property for the price Alexander proposed to pay for it, and was ready and willing to reconvey the property so purchased to Alexander in his life time, and is ready and willing to convey it to his administrator, and she prays that the court decree such reconveyance, and that the note and mortgage be cancelled, or that the entire lot be conveyed to the administrator for the sum of $11,000 according to the agreement with Alexander.

Samuel R. Mattair answers admitting the giving of the note and mortgage, but says that at the time of their execution and acknowledgment by him he was so drunk from

the free use of intoxicating liquors that he was deprived of his reason and will and was wholly incapacitated for business and (3) continued in such state until after Alexander left the State.

He alleges (4th) that most of· the intoxicating· liquors used by him, and from which he became intoxicated, were furnished by Alexander.

[5.] That but for such intoxication he would not have consented to the execution of the note and mortgage for $3,000, and he denies having paid the $180 interest to Alexander in his life time.

[6.] That in January, 1879, on Alexander's return to Florida, defendant called on him at Brooklyn and urged him to cancel the mortgage and note, on account of his (defendant) condition of intoxication at the time of the transaction, and proposed that he and his wife would re-convey to him the lot, and Alexander agreed to this proposition.

[7.] That Alexander having been taken sick defendants both visited him and made the same proposition, and Alexander promised to go to Jacksonville as soon as he could and make all things satisfactory. This was eight days before his death.

[8.] That he (Mattair) never admitted the validity of the note and mortgage, but at all times repudiated them as the offspring of an unfair advantage taken of him while he was incapacitated from doing business by reason of intoxication.

[9.] That the note and mortgage were given for the purchase-money of the west half of lot 2, block 22, and for no other consideration ; and that said half lot was not worth $3,000.

[10.] That he is, and always has been, ready and willing to convey the half lot to Alexander in his life time, and to·

the administrator since his decease, and prays that the court will decree such conveyance and the cancellation of the note and mortgage.

The answer of Mrs. Mattair was excepted to, save so much as admits the giving of the note and mortgage for the purchase-money of the half lot, and the exceptions sustained upon the ground of impertinence.

The answer of S. A. Mattair, as to so much thereof as is indicated by the foregoing numbers in brackets [3, 4, 5, 6, 7, 8, 9, 10,] was excepted to, and the exceptions to paragraphs numbered 3, 4, 6, 7, 9, 10, were overruled, and the exceptions to the paragraphs numbered 5 and 8 were sustained. The remaining portions of the answer were put in issue by general replication.

The complainants gave in evidence the note and a certified copy of the mortgage. Some questions were raised as to the introduction of the copy, and before the cause was submitted the original mortgage was filed in evidence. It was also proved that the first instalment of interest was paid by defendants when it became due, and Mr. Greely testified that Mr. Mattair said to him that the endorsement of payment of the interest was made on the note by Mattair himself. Several witnesses testify that at the time the note and mortgage were executed by Mattair he was so much intoxicated he was incapable of doing business intelligently, and had been in that condition for some time before and after that day.

Mrs. Mattair testified to sundry conversations with Mr. Alexander relating to the bargain and the inducements leading to the purchase by her and the giving of the mortgage, and also subsequent conversations in reference to an arrangement.

The cause having been submitted to the court, a decree was made that the defendants pay the amount due on the

note and mortgage and the costs within eight days, and in default thereof that the entire property be sold to satisfy the same, and that the defendants be foreclosed of all equity of redemption, &c., in the usual form.

From this decree the defendants appealed.

The grounds upon which it is prayed that the decree should be reversed are (1 and 2) that the court erroneously sustained the exceptions to the answers of the defendants, as shown by the record; and (3) upon the ground that this was the mortgage of a married woman upon her separate property, and it does not appear that such property should be bound by it, the mortgage having been given to secure the note of a married woman and her husband, which, it is claimed, is void as to her; and (4) upon the further ground that the court did not take into consideration and give proper weight to the defence set up by the separate answer of Mrs. Mattair, and to the testimony in support of it; and (5) upon the further ground that the court did not consider and give proper weight to the defence of drunkenness and mental incapacity of Mr. Mattair, and in decreeing that he should pay any deficiency of the amount due after a sale of the property; and (6) in receiving a certified copy of the mortgage in evidence instead of the original; and (7) in giving a decree against a married woman personally for the payment of the debt; and in limiting the equity of redemption to eight days' time after decree.

*C. P. Cooper* for Appellants.

*Geo. Wheaton Deans* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

We first consider the third ground assigned for error in the proceedings and decree, which is that the mortgage is

on the separate property of the wife to secure her note, which note is void as to her, and no proper allegations are made in the bill to show that her property should be charged.

This objection is not sustained by the record. The note was signed by her and by her husband. *Prima facie*, therefore it is a valid note of the husband. The act of February 4, 1835, (Th. Dig., 179,) provides that a married woman may sell, transfer and mortgage her real estate of inheritance as if she were sole and unmarried, her husband joining therein. This would seem to settle the question that she may bind her real estate to secure any valid indebtedness of herself and her husband. The cases of Dollner, Potter & Co. vs. Snow, 16 Fla., 86, and Hodges and Wife vs. Price, 18 Fla., cited by appellants' counsel, do not apply to the circumstances of this case. The testimony and the answers of the defendants show that the note and mortgage were given to secure the purchase price of property conveyed to the wife.

The equitable rule is that any debt contracted by a married woman for the benefit of her separate estate or property is valid to the extent that it may be enforced out of any such estate or property, whether expressly secured by mortgage or not. Merritt vs. Jenkins, 17 Fla., 593, and Blumer vs. Pollak & Co., decided at the present term, and see Story's Eq. Jur., §1400, *et seq.*

The sixth error alleged is that the court overruled the defendant's objection to the introduction of the copy of the mortgage in evidence in lieu of the original under the circumstances of the case. The error, however, if any, was cured by the subsequent production of the original in evidence.

The seventh error is that the decree charges the married woman personally by substantially entering a judgment

against her to all intents and purposes a judgment at law, and in decreeing a limit of the equity of redemption to eight days from the decree.

This is an erroneous construction of the decree. It charges only the mortgaged property with the money due on the note and mortgage, and is not in terms, or in effect, a general judgment against her. It decrees that the defendants pay the money due in eight days, and if not so paid that the property may be sold to pay it, (in the usual form;) and, further, that the defendants be forever barred of all equity of redemption, &c.

This decree is not in any sense such a judgment as that an execution or other process can issue thereon against any property except that which is expressly mortgaged. The bar of the rights of redemption, &c., are effective only after the sale.

It is further urged that this debt is not the debt of Mr. Mattair, but that of Mrs. Mattair, he having signed it only " to consent," yet the decree concludes with a provision that execution may issue against Mattair alone for any deficiency after sale of the mortgaged property.

This note is the note of Mattair, and he is personally liable on it, even if Mrs. M. is not so liable; that it was given to " consent," or for the benefit of his wife, does not exempt him from such personal liability.

It is urged also that the bill does not pray a personal judgment for the deficiency, and, therefore, the decree in charging him with the deficiency is wrong. But it is not necessary that a prayer for a judgment, or execution for any deficiency, shall be made by the bill. The bill concludes with a prayer for other and further relief generally, and this is sufficient. Rule 89, regulating the practice in equity, authorizes a decree for any such deficiency, and provides that execution may issue therefor.

As to the several grounds assigned for a reversal of the decree other than those mentioned, to-wit: the sustaining of the several exceptions to the answer of the defendants ; that the court did not give proper weight to the evidence and the answers, nor to the fact of the drunkenness of Mattair and his mental incapacity ; they will be disposed of by what follows. It is proper to remark, however, that all the testimony of the defendants as to their transactions and conversations with Alexander before, at the time and after the conveyance and the note and mortgage were executed, is illegal and improper to be considered as evidence of such matters. They are prohibited by law from giving such testimony, Alexander being dead, unless the administrator has testified in relation thereto. All such testimony should be struck out by the court. See Chap. 1983, Sec. 1, Laws of 1874.

If Mr. Mattair was in such a state of intoxication at the time of the giving of the mortgage that he was incapable of transacting business intelligently, the contract on his part was voidable. Contracts by such persons are considered by the court in the United States as voidable, not void. Chitty on Contracts, 10 Am. Ed., 154, and notes citing a large number of authorities.

In this case, six months after the giving of the note and mortgage, the defendants voluntarily paid the interest due thereon. They are in possession of the lot conveyed to them by Alexander in consideration of the note and mortgage. They have not tendered a reconveyance of the lot, or done any act toward rescinding the bargain. If the defences set up shall be allowed, where are the parties ? The bill is dismissed, thereby denying the right to foreclose the mortgage, and the defendants in the possession and enjoyment of the property conveyed to them, and which they have not paid for at the contract price or any other price.

And this demonstrates that these defendants should not be allowed to interpose by answer such defences as they have set up to the foreclosure of the mortgage.

Who seeks equity must do equity. The defendants cannot be allowed to keep the property obtained by the transaction and fail to fulfill their agreement to pay for it. Gore vs. Gibson, 13 M. & W., 623, 627.

The remedy of the defendants was to file a cross-bill or an original bill after tendering a reconveyance and otherwise doing equity, and obtaining a rescission of the entire contract. The agreement being voidable is yet binding upon the parties until set aside by proper proceedings. In Eddleston vs. Collins, 17 Eng. L. & Eq. R., 296, 300, this language is used: "The plaintiff's security is, I must now assume, well created by deed, and I rather apprehend such a security, if impeached at all, must be impeached by cross-bill. The security is good until impeached, and to allow the defendant to impeach it by her answer, and by evidence on her part, would be to make a decree in favor of the defendant upon the application of the plaintiff. If the defendant were at liberty thus to impeach the plaintiff's title, she must equally be at liberty wholly to subvert it; and the consequence of allowing this would be that plaintiffs coming to this court for relief might find themselves in a position of being decreed to convey to the defendants."

This court has several times enforced the rule that affirmative relief cannot be granted to a defendant against a plaintiff upon the mere answer of the defendant. See Wooten vs. Bellinger, 17 Fla., 298.

As to the matters set up by the answer of Mrs. Mattair that she was induced by the golden visions held before her by Mr. Alexander as to the value she would realize for her whole property, and that his friend or himself would buy it from her at some future day, and that the property

bought by her under such influence was not worth what she had agreed to pay for it, the same rule is applicable. It was held in Sanborn vs. Osgood, 16 N. H., 112, (cited by Jones on Mort., §625,) that a fraudulent misrepresentation as to the value of property sold by a mortgagee, in payment of which he has taken a mortgage, does not avoid the mortgage if there is any value at all in the property sold. The property, which was the subject of the sale and mortgage, must first be restored to the vendor, or a reconveyance tendered, before the mortgage can be rescinded.

Where a party seeks to rescind a contract for fraud he must ask the aid of the court in a reasonable time, and be in a situation to restore to the opposite party whatever he may have received from him. 2 Gilman, 650.

In view of the circumstances disclosed in the record, we think the decree should be so modified as to direct the sale of the west half of the lot before selling the east half, which it seems is the home of the family, if the defendants so desire.

The decree is affirmed, and the cause remanded with directions that the court order the sale of the west half of the mortgaged premises before selling the east half thereof, in case the defendants so desire. The costs of this appeal and proceedings to be paid by the appellants.