H. B. SNELL, *et al.*, *Plaintiffs in Error*, *v.* BAINBRIDGE RICHARDSON, *Defendant in Error*.

Opinion Filed April 28, 1914.

1. The Supreme Court of Florida had the authority in 1873, when such rule was adopted, under the statute as it then stood, to adopt Equity Rule No. 89, which reads as follows: "In suits in equity for the foreclosure of mortgages, a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of the sale or sales, and execution may issue for the collection of the same as is prescribed in the rule regulating the equity practice where the decree is solely for the payment of money."

2. Equity Rule No. 89 does not authorize the entry of a deficiency decree against the endorsers of a note, but only against the mortgagor.

3. In the absence of any statute or rule so authorizing, a deficiency decree cannot be entered in a suit for the enforcement of a mortgage lien against the endorsers of the note.

Writ of Error to Circuit Court for Leon County; J. W. Malone, Judge.

Judgment reversed.

*John E. & Julian Hartridge,* for Plaintiffs in Error;

*Frank L. Dancy,* for Defendant in Error. .

SHACKLEFORD, C. J.—Bainbridge Richardson filed his bill in chancery against the Tallahassee Tobacco Company, a corporation, and H. B. Snell and R. J. Riles for the enforcement of a lien, created by a mortgage executed by the Tallahassee Tobacco Company to E. G. Phinney to secure the payment of a promissory note for the sum of $2,000.00, dated the 2nd day of October, 1908, payable six months after date, with interest from date at the rate of eight per cent, per annum, executed by the Tallahassee Tobacco Company to the order of E. G. Phinney, which note was endorsed by H. B. Snell and R. J. Riles and was assigned and transferred for value before maturity by E. G. Phinney to Bainbridge Richardson. Just what steps were taken in this proceeding or whether any defense was made by any of the defendants the transcript in the instant case does not disclose. It does appear that a final decree was rendered therein, wherein it was "ordered, adjudged and decreed, that the

defendants, Tallahassee Tobacco Company, a corporation under and by virtue of the laws of the State of Florida, H. B. Snell and R. J. Riles, pay to the complainant forthwith the said sum of Two Thousand One Hundred and Seventy-three and 33-100 Dollars ($2,173.33), and also the sum of Two Hundred Dollars ($200.00), which is hereby allowed by the court to the complainant as a reasonable attorney's fee for the foreclosure of said mortgage, and also the costs of this suit to be computed by the Clerk of this Court." It was further ordered, adjudged and decreed that, in default of the payment of the amount so found to be due the complainant, the mortgaged property be sold by the special master, appointed for that purpose. On the 15th day of November, 1911, the following deficiency decree was rendered:

"This day comes the Master in Chancery, appointed by previous decree of the court herein, to-wit: On the 1st day of August, 1911, to make sale of the property described in said former decree, and to carry out the orders and provisions thereof, and makes report of his proceedings; and the court having examined the same, and finding that the Master has in every respect carried out the orders in said decree contained and in strict conformity to law, and that said sale was fairly made; and the Court, being fully advised in the premises, it is hereby ordered, adjudged and decreed that the proceedings, sale and report of the said Master be, and the same are hereby approved and confirmed. And it further appearing to the Court, from the report of said Master that the proceeds of said sale will be insufficient to pay the amount due and decree to be paid to the complainant in said cause under said former decree, together with the fees, disbursements and commissions of said Master, and the cost of this proceeding, and that there is still due the

complainant the sum of Two Thousand Four Hundred and Two and 31-100 dollars, and that the defendants, Tallahassee Tobacco Company, a corporation, H. B. Snell and R. J. Riles, are personally liable to the complainant therefor; it is further Ordered, Adjudged and Decreed that the defendants, Tallahassee Tobacco Company, a corporation under the laws of Florida, H. B. Snell and R. J. Riles, pay to the complainant the amount of said deficiency, to-wit: the sum of Two Thousand Four Hundred and Two and 31-100 dollars, with interest thereon from the date of said Master's sale; and that the complainant have execution therefor."

An execution was issued upon this decree against all of the defendants named therein. Thereupon H. B. Snell filed the following affidavit of illegality:

"Before me a Notary Public in and for said State and County personally came H. B. Snell, who being by me first duly sworn deposes and says that the said execution against him in the above entitled case was issued illegally, and that the said illegality consists:

(1) In that the said suit, the basis of said execution, was a foreclosure of the mortgage given by the Tallahassee Tobacco Company, and which was given to secure a note upon which this affiant, H. B. Snell and R. J. Riles and Charles Blum were joint endorsers, and which said mortgage was not executed by this affiant, or the said R. J. Riles, or the said Charles Blum, nor was this affiant or either of his co-endorsers in any way connected with said mortgage, and that said mortgage having been foreclosed, a deficiency judgment was entered against the said Tallahassee Tobacco Company and H. B. Snell and R. J. Riles, the said Charles Blum not having been made a defendant in the foreclosure proceedings, and said deficiency judgment was entered notwithstanding

the fact that this affiiant and the said R. J. Riles were not parties to the mortgage, and had never executed the same, and this affiant, not being a party to the said mortgage he had a right to have his day in court in a suit at law against him as endorser of the note, subject to such defense as endorsers might have, and in this particular affiiant was deprived of a substantial right.

(2)   In that endorsers cannot be sued jointly, and no joint judgment may be entered against joint endorsers.

(3)·  That the land, the subject matter of the mortgage foreclosed by the said Bainbridge Richardson, and the land described therein had been previously sold under an execution against the Tallahassee Tobacco Company before the foreclosure of said mortgage by Bainbridge Richahrdson, and that the purchaser of said property under said execution was not made a defendant in the foreclosure suit brought by the said Bainbridge Richardson as above, wherefore any sale under the foreclosure decree rendered in the suit of Bainbridge Richardson against the Tallahassee Tobacco Company and H. B. Snell and R. J. Riles was void, and being void, any deficiency judgment based thereon is illegal and void. Affiant further says that no part of said execution has been paid."

H. B. Snell also filed a bond with United States Fidelity and Guaranty Company of Baltimore, a corporation, as surety.

On the 12th day of December, 1913, the following judgment was rendered:

"This day came the defendant in execution of H. B. Snell, by his attorney, and argued the question of the illegality of the issue of the execution in the above entitled suit; thereupon it is considered by the court, that the said execution was issued legally, and the Clerk of

this court is hereby directed to enter up a judgment against the said H. B. Snell and the surety on his bond, The United States Fidelity and Guaranty Company of Baltimere for the whole amount of said execution, to-wit: Two Thousand Eight Hundred and Ninety-one and 65-100 dollars ($2,891.65) and to issue execution thereon.

In pursuance of the direction of the court in the above entitled cause, it is considered by the court, that the plaintiff Bainbridge Richardson do recover of the defendant, H. B. Snell, and the surety on his bond, The United States Fidelity and Guaranty Company, Two Thousand Eight Hundred and Ninety-one Dollars and Sixty-five Cents ($2,891.65), the amount of said execution, together with Nine and 99-100 Dollars costs in this behalf sustained, and the defendant in mercy, etc."

To this judgment H. B. Snell and United States Fidelity and Guaranty Company of Baltimore have taken writ of error and have assigned five errors, all of which may be considered together. The first contention made in support thereof is that this court was not authorized or empowered to adopt Equity Rule 89, which reads as follows:

"In suits in equity for the foreclosure of mortgages, a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of the sale or sales, and execution may issue for the collection of the same as is prescribed in the rule, regulating the equity practice where the decree is solely for the payment of money."

We find, upon examination, that Section 5 of Chapter 5 of the Laws of Florida, approved July the 25th, 1845, found on page 12 of the Acts of the First General Assembly, reads as follows:

"*Be it further enacted,* That said Supreme Court shall

hold a term or session at the Capitol in Tallahassee to commence on the first Monday of January 1846, at which term the said court shall make and adopt rules for the regulation of the practice in all cases before it, and before said Circuit Courts, which shall be published by the Attorney General as the laws are published and be submitted to the General Assembly at its next session and shall be in force till annulled and altered."

Under the authority so conferred, the Supreme Court adopted the following rule, numbered 24, found on page XI of the rules prefixed to 1 Fla.:

"The rules of practice in the Courts of Equity of the United States, as prescribed by the Supreme Court of the United States, and when they are inapplicable, the rules of practice of the High Court of Chancery, in England, shall be rules for the practice of the courts in this State, when exercising equity jurisdiction; and the rules of said Supreme Court shall be published with these rules, and with the laws of the last session."

At the December Term, 1863, of the United States Supreme Court, Equity Rule 92 was adopted, which is as follows:

"*Ordered,* That in suits for the foreclosure of mortgages in the Circuit Courts of the United States, or in any court of the Territories having jurisdiction of the same, a decree may be rendered for any balance that may be found due to the complaint over and above the proceeds of the sale or sales, and execution may issue for the collection of the same, as is provided in the eighth rule of this court regulating the equity practice, where the decree is solely for the payment of money."

This rule of the United States Supreme Court remained in force until February the 1st, 1913, when it was superseded by Equity Rule 10, which is as follows:

"In suits for the foreclosure of mortgages, or the enforcement of other liens, a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of the sale or sales, and execution may issue for the collection of the same, as is provided in Rule 8 when the decree is solely for the payment of money."

Section 1 of Chapter 79 of the Laws of Florida, Acts of 1846, page 23, contained the following provision: "That the Supreme Court of this State shall have power to abolish, alter or amend, or add to the rules adopted at the last session of said court for the regulation of the practice therein, and of the practice in the Circuit Courts of this State, whenever to said Supreme Court it may seem expedient and proper."

Section 1 of Chapter 1938 of the Laws of Florida, Acts of 1873, page 15, expressly repealed the "Act entitled An Act to Simplify and Abridge the Practice, Pleadings and Proceedings in the Courts of this State, approved 19th February, 1870, known as the Code," while Section 2 thereof provided as follows: "That all laws, practice, pleadings, rules and proceedings existing in this State at the time of the passage of the Act mentioned in the foregoing section, which were repealed or supplied by the same, be, and the same are hereby, revived, except where they conflict with the provisions of this Act."

Section 12 thereof reads as follows: "That nothing herein contained shall be construed to limit or abridge the power heretofore existing in or conferred upon the Supreme Court of this State to make, amend, annul, or modify any and all rules of practice, but on the contrary full power is conferred on said court to make any and all rules of practice, pleadings, and proceedings to carry out the provisions of this Act, and to prescribe, regulate

and control the practice, pleadings and proceedings in the several courts of this State."

Under the power thus conferred, this court, in 1873, adopted Equity Rule 89, which we have copied above. As to the authority of this court to adopt such rule we have no doubt. Its validity has, so far as we are informed, never previously been called in question, but has several times been recognized by this court. See Mattair v. Card, 18 Fla. 761; Scott v. Russ, 21 Fla. 260; Lenfesty v. Coe, 26 Fla. 49, 7 South. Rep. 2; Webber v. Blanc, 39 Fla. 224, 22 South. Rep. 655; Johnson v. McKinnon, 45 Fla. 388, 34 South. Rep. 272; Johnson v. McKinnon, 54 Fla. 221, 45 South. Rep. 23, 13 L. R. A. (N. S.) 874, 127 Amer. St. Rep. 135, 14 Ann. Cas. 180. It may well be true that even under the statute as it now stands, Section 1740 of the General Statutes, this court would have the power to adopt Equity Rule 89, but whether so or not there can be no question that it had such power in 1873, under the statute as it then stood, when such rule was adopted. Even if we should reach the conclusion that such rule was inoperative, it would not inure to the benefit of the plaintiffs in error. In such event, Section 1877 of the General Statutes, which is as follows, would apply: "In the absence of provisions of the law or rules of practice of this State, the rules of practice in the courts of equity of the United States, as prescribed by the Supreme Court thereof, under the Act of Congress of the 8th of May, One Thousand seven hundred and ninety-two, shall be rules for the practice of the courts of this State when exercising equity jurisdiction; and when the rules of practice so directed by the Supreme Court do not apply, the practice of the courts shall be regulated by the practice of the high court of chancery of England."

As to the construction that has been placed by this court upon such statute, see Kahn v. Weinlander, 39 Fla. 210, 22 South. Rep. 653; Long v. Anderson, 48 Fla. 279, 37 South. Rep. 216, 5 Ann. Cas. 846; Cepero v. Hartridge, 51 Fla. 409, 41 South. Rep. 192. This being true, it would make no difference as to whether the old equity rule of the United States Supreme Court, No. 92, or the new equity rule No. 10, each of which we have copied above, was in force, as either authorizes the entry of a deficiency decree.

As to the further contention of the plaintiffs in error that the bill did not specifically pray for the entry of a deficiency decree, it is sufficient to say that this court held in Mattair v. Card, 18 Fla. 761, that "a decree against a mortgagor for any deficiency of money due after deducting the amount realized on the sale, may be entered under the general prayer of the bill. See Equity Rule 89, which authorizes such decree and execution therefor."

In dealing with the next contention of the plaintiffs in error we encounter a more difficult point. It is urged that, even if Equity Rule 89 be valid, it does not authorize the entry of a deficiency decree against the endorsers of the note, but only against the mortgagor. We are of the opinion that this contention is well grounded. The rule does not so authorize and we cannot read such provision into it. See the discussion in 27 Cyc. 1749, and the authorities cited in the notes. In the absence of a statute, it would seem that no deficiency decree can be rendered against the endorsers of a note. See also 2 Jones on Mortgages (6th ed.) Section 1710. It follows that for this error the judgment must be reversed, and it is so ordered. Having reached this conclusion, it becomes unnecessary to determine the effect of the omission as a defendant to the suit for the enforcement of the mort-

gage lien of Charles Blum, one of the endorsers of the note. We do not wish to be understood as holding that the defendant in error may not proceed against the endorsers of the note for the balance remaining due upon the. note in an action at law. See Webber v. Blanc, 39 Fla. 224, 22 South. Rep. 655.

Judgment reversed.

TAYLOR, COCKRELL, HOCKER AND WHITFIELD, J. J., concur.