REALTY MORTGAGE COMPANY, A CORPORATION, *Appellant,* v. T. V. MOORE, *Appellee.*

Opinion Filed June 10, 1920.

1. (Foreclosure of Mortgage—Decree for Deficiency).—Upon the foreclosure of a mortgage upon real estate, the right of

the complainant to a decree against the mortgagor for any balance that may be found to be due to the plaintiff over and above the prceeds of sale must be determined with reference to the pleading in connection with the evidence in each case.

2. (Foreclosure of Mortgage—Decree for Deficiency—Power of Court.)—Circuit Courts, in cases for the foreclosure of mortgages, under Equity Rule 89 of the Rules of the Circuit Court—In equity, have the power to enter a decree against the mortgagor for any balance that may be found to be due to the plaintiff, over and above the proceeds of sale.

3. (Foreclosure of Mortgages—Equity Rule 89).—Equity Rule 89 of the Rules of the Circuit Court in Equity, granting to such courts in suits in equity for the foreclosure of. mortgages, the power to render a decree against the mortgagor for any balance that may be found to be due the plaintiff, over and above the proceeds of the sale .or sales of the mortgaged property, does not deprive the court of its sound judicial discretion to determine the right to such deficiency decree.

4. (Foreclosure of Mortgages—Deficiency Decree).—Since the foreclosure proceeding is the judicial means by which certain property is subjected to the payment of the debt, and in which the amount of the debt is ascertained and decreed to be paid, it follows that any defense that may be offered to a decree of foreclosure, or against a personal decree, or for any balance that may be found due to the plaintiff over and above the proceeds of sale, should be presented in due course of the proceedings, or a sufficient reason given for not doing so.

5. (Foreclosure of Mortgage—Right to a Deficiency. Decree).— A mortgagee may so deal with the mortgagor's grantee of the mortgaged premises as to deny to the mortgagee the right to a deficiency decree against the mortgagor.

6. (Foreclosure of Mortgage—Conveyance of the Mortgaged Property).—Where a mortgagor has conveyed the mort-

gaged property, subject to the debt secured by the mortgage, before the maturity, before the maturity of the debt, and the conveyance recites that the grantee assumes and promises to pay the debt. but does not pay it on its maturity, nor afterwards; and the mortgagee grants extensions of time for the payment of the debt to the grantee of the mortgagor, against the expressed wish of the mortgagor, and continues to grant extensions for a long period of time after knowledge that such extension is against the wish of the mortgagor, and the debt still remains unpaid, begins a foreclosure against the mortgagor and the grantee of the mortgaged property seeking to sell the mortgaged property in satisfaction of the debt secured by the mortgage in the event the property does not sell for sufficient to satisfy the same, then for a deficiency decree against the mortgagor for such balance, it is incumbent on the mortgagor, in order to excuse himself for such deficiency decree, to allege and to prove that such extensions were against his wish, resulting in loss in value of the mortgaged property, or that he had requested a foreclosure of the mortgage while the property was sufficient to satisfy the demand. It is not necessary that such mortgagor should have used any precise words or expression in making the request to foreclose. His objection to such extension or extensions, the pointing out to the mortgagee of the danger in the depreciation of the mortgaged property after the maturity of the debt, in connection with the course of dealing by the mortgagee with the grantee, may be sufficient to deny the right to a deficiency decree.

7. (Foreclosure of Mortgage—Extensions of Time, Deficiency Decree).—Where the mortgaged property was sufficient to pay the debt on its maturity, and the mortgagee grants extension of time for its payment without the knowledge of the mortgagor, and when the mortgagor hears of it, protest against such extension made to the grantee of the mortgaged property, protest against the same and denies his liability by reason of such extension, points out the danger of the mortgaged property depreciating to the mortgagee, and thereafter other and continued extensions covering a period of several years after the debt became due, during which

extended time the mortgaged property depreciates by reason of a freeze, and thereafter the mortgage is foreclosed and the mortgaged property did not sell for sufficient to pay the debt, the mortgagee has not the right to a decree for the deficiency.

8. (Foreclosure of Mortgage—Deficiency Decree—Equity Rule 89).—The power vested in Circuit Courts, in Equity, by Rule 89 of the Circuit Courts in Equity, for the foreclosure of mortgages declaring that a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of sale or sales, is a discretionary one, and may be granted or denied according to the facts and circumstances in each case.

An Appeal from the Circuit Court for St. Lucie County; E. B. Donnell, Judge.

Order affirmed.

*Scott M. Loftin* and *Robert H. Anderson,* for Appellant;

*Hudson, Wolfe & Cason,* for Appellee.

BULLOCK, Circuit Judge.—Appellant, as complainant in the lower court, and hereinafter referred to as the company, foreclosed a mortgage given to it by T. V. Moore, who is hereinafter referred to as the defendant, and after a sale of the mortgaged premises, report of and confirmation of the sale, which sale did not bring sufficient to pay the amount of the final decree and cost, applied for a deficiency decree against the defendant, which application was denied, and from the order denying this application takes its appeal to this court.

The record shows that the defendant was the owner of

an undivided one-half interest in a certain described tract of land.

On January 24th, 1905, defendant gave the company his promissory note in the sum of three thousand dollars, due one year after its date, with interest at eight per cent. per annum, payable semi-annually, and to secure the payment of the said note gave a mortgage on his undivided one-half interest in said lands. The note is under seal and is copied at length in the mortgage.

The mortgage contains the usual provision for the payment of interest and the taxes on the mortgaged premises, cost, expenses and solicitors' fee, with a provision that "any default herein shall entitle" the mortgagor to foreclose. The mortgage was duly recorded January 27th, 1905.

On the 7th of March, 1905, the defendant, by warranty deed, conveyed his undivided interest in said lands to one Lillian A. Bray, a married woman, and placed her in possession thereof.

This deed of conveyance recited, "It is expressly agreed and understood between the parties hereto, that this deed is made subject to a mortgage of three thousand dollars," and refers to and describes the mortgage given by the defendant to the complainant, with the further statement, "and the party of the second part agrees to assume said mortgage." This deed was recorded on the 23rd of July, 1905. The company did not know of this conveyance until some five or six weeks after its execution.

Lillian A. Bray instituted partition proceedings of the said lands, to which the company was a party defendant, terminating in a final decree on July 11th, 1910, and commissioners appointed who made partition of the lands and

reported the same, which report was approved and confirmed by the court on the 18th of July, 1910. Lillian A. Bray entered into the possession of the part allotted to her.

While there is some testimony in the record relative to a deed from Lillian A. Bray to J. C. Gay, no deeds have been introduced and it seems that it is immaterial for the determination of the matter now presented. The caretaker in the possession of the land on behalf of Mrs. Bray and others were parties defendant to the foreclosure and set up certain rights which are not material to consider, as they in no way involve the questions submitted.

On July 17th, 1914, the company filed its bill of foreclosure, in which it expressly recognized the partition of the lands and asserted its mortgage lien on the portion of the land allotted to Mrs. Bray. The bill of foreclosure is in the ordinary and usual form, with a prayer for the specific relief prayed and for general relief.

In determining the right of the complainant to decree for the deficiency, it becomes necessary to consider the pleadings and the testimony.

Interest on the note was payable semi-annually and a default in the payment of any installment gave the right to foreclose the mortgage. The first six months interest was paid at some time by Lillian A. Bray.

The answer of the defendant admits the execution of the note and mortgage; is without knowledge as to the partition of the lands, or of the interest of the other defendants; sets up the assumption of the debt by the grantee, and that the conveyance was with the knowledge and consent of the company, and that it agreed to look to Mrs. Bray for payment; and dealt with Mrs. Bray as

the actual debtor, sent her interest statements and collected interest from Mrs. Bray and not the defendant. That without the knowledge of the defendant, complainant made agreements for the extension of time of payment, and that when the defendant discovered the agreements and extensions he protested, and that he explained to the complainant the nature of the security, and the danger of depreciation in value of the mortgaged premises, and that in spite thereof the complainant, after the information thus given, made further extensions, permitted the Brays to gather the pineapple crops grown on the land and retain the proceeds thereof, and by reason of the extensions neglected the mortgaged premises and the value greatly depreciated, when if it had not been for the extensions and the mortgage foreclosed sooner, the mortgaged property would have been sufficient to satisfy the decree. Defendant claimed that the complainant had estopped itself to claim or demand any deficiency decree against him by its conduct.

The sufficiency of this answer was not questioned.

The note became due 24th of January, 1906, with six months accrued interest. July 16th, 1906, the company addressed a letter to the defendant stating that "Mr. R. E. Bray states that he cannot well pay more than $500.00 on the $3,000.00 mortgage which you and your wife gave us," and called attention that the note was due January 24th, 1906. The letter, continuing, said: "At Mr. Bray's earnest request we extended it six months," and further stated as defendant was primarily liable, "We do not feel like agreeing to extend it again without your consent." To this letter the defendant immediately replied, on July 19th, 1906, expressing surprise, and said: ''If you expected me to see this loan paid you certainly should

not have granted an extension from January 25th, 1906, to the present time without my consent, thus giving the holder of the property not only the benefit of the year's crop, but giving him the advantage of curtailing expenses at the expense of future crops. Pineapple property, especially, does not remain at a standstill, but appreciates or rapidly depreciates, according to the attention it receives. I may say I certainly should not have agreed to an extension in the circumstances, if I had been liable for the debt and had been advised at the time."

On August the 13th, 1906, the company replied to the letter of the defendant last mentioned, stating that Mrs. Bray had paid interest to January 24th, 1906, but no part of the principal, and submitted the question to the defendant if he was "willing to have it extended any longer," saying, if not, "we must foreclose." To this letter the defendant replied; "9-16-1906," saying, "I must refer you to my letter of July 19th, to which I can add nothing further."

As between the complainant and the defendant the matter of the note, or its payment, was not mentioned for about four years, when on January 29th, 1910, a statement of interest was sent by the company to the defendant, which statement said: "The interest, amounting to $120.00, on your mortgage fell due on Jany. 24th, 1910. Please remit or call at my office and settle PROMPTLY and oblige," to which the defendant immediately replied stating that when the company "arranged with the owner of the property which the mortgage covers for an extension, without giving me, or my interest consideration, I felt then and now that I could not longer justly be held responsible for the result." To this disclaimer of responsibility and charging the improper extension and warn-

ing against the results, the company replied on February 11th, 1910, saying, "Sending the interest notice to you was an error on the part of my stenographer and I regret that the matter occurred."

No further transactions or communications between the company and the defendant took place.

The bill was filed and, after issue the matter was referred to a master and witnesses were examined, but we cannot see that the testimony has any bearing on the matter other than the fact of establishing the condition and value of the mortgaged property at the different dates mentioned. The letters hereinbefore referred to were introduced in evidence before the master.

The company introduced Mr. Chillingsworth, who is in fact the company, as a witness, who testified that the company looked to defendant for payment and never agreed to accept Mrs. Bray as its debtor, and the company did not know of the sale for several weeks; said that one of the real inducements influencing the loan was "The personal credit and standing of" defendant, perhaps what bankers commonly call the moral risk, that it was good.

We have been much impressed with the fact that if the moral risk, "or personal credit and standing" of the defendant with the complainant was good and largely influenced the loan, why it was that the complainant allowed practically four years to pass and never refer to the matter until long after the note was due, and when by some "error on the part of the stenographer," defendant was notified of the accrued and past due interest, for which he immediately repudiated his liability, that the company saw fit to apologize for sending the notice. When Mr. Chillingworth testified, and with this letter

in the record, he did not see fit to make any explanation of this matter. We are left to conjecture and may we not, with the greatest propriety, in view of the testimony showing the value of this property all of this time, and the course of dealing between the company and the grantee of defendant, conclude that it was not so much the moral risk, or "personal credit and standing" of defendant, but of the company's reliance on the value of the property? Evidently the company, at that time, was satisfied to look to the mortgaged property for the debt. Defendant appreciated the danger to such property and cautioned the company and gave the reasons for apprehension of depreciation, protested against extensions, notwithstanding which the company saw fit to grant continued and repeated extensions for practically eight years, and when disaster came, is relying on the "personal credit and standing of defendant." Do not these facts rather suggest that at the time of the writing of the letter of apology that there was in the mind of the writer, Mr. Chillingworth, the real company, a consciousness of the fact that the course of dealing between the company and the Brays were such as to discharge defendant from liability?

The record shows that in the year 1904 the income from this mortgaged property was $4,000.00, but it required skilful attention and fertilization, as often as three or four times a year. It sold in 1905 for a consideration of $5,000.00; some 25 or 30 acres in pineapples, worth from $300.00 to $350.00 per acre as its reasonable market value; the pineapple grove remained in good condition from 1905 until 1910, but after the cold of 1910 the cold hurt it, or perhaps the cold of that year, 1910, hurt it. This was three or four years after the mortgage became due. Nothing seems to have been done towards rebuild-

ing it since 1910, so that the very identical condition happened against which the defendant had cautioned the company and objected to an extension of time for the payment of the note.

The record shows that the property sold for $1,510.00, leaving a balance due on the decree of $3,632.10, for which the company now seeks a deficiency decree against the defendant.

This court is not called upon to determine whether or not a mortgagee could obtain a judgment against the grantee of the mortgaged premises, where the deed recited the existence of the mortgage and that the grantee had assumed its payment, but the sole question is whether the mortgagee company is entitled to a deficiency decree against the defendant under the circumstances as disclosed in this record.

Rule 89 of Rules of the Circuit Court in Equity is the only authority therefor. The Supreme Court of Florida had the authority to adopt such rule. Snell v. Richardson, 67 Fla. 386, 65 South. Rep. 592.

This rule provides that "in suits in equity for foreclosure of mortgages, a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of sale," and has been recognized by this court in several cases. Snell v. Richardson, *supra,* and cases cited at text page 374; Etter v. State Bank of Florida, 76 Fla. 203, 79 South. Rep. 724.

"Since the foreclosure proceeding is the judicial means by which certain property is subjected to the payment of the debt and in which the amount of the debt is ascertained and decreed to be paid, it follows that any defense

that may be offered to a decree of foreclosure, or against a personal decree for the debt, should be presented in due course during the proceedings, or a sufficient reason given for not doing so." Etter v. State Bank of Florida, *supra.*

The defense against a deficiency judgment was set up in the proceeding of foreclosure. The defendant's answer insisted that by reason of the company's course of dealing and extensions of time, it had estopped itself to claim a deficiency decree.

The evidence fails to show that the company ever gave any verbal or written statement that it would look to the vendee of the mortgaged premises, or that it had discharged the defendant, but it is abundantly shown that it knew about the transfer within a few weeks after the conveyance, and did negotiate with the grantee and collect interest from the grantee, and made repeated extensions to the grantee for the payment of the note, over the protest of the defendant, and as far back as July 16th, 1906, recognized the defendant's rights, writing the defendant that "we do not feel like agreeing to extend it again without your consent."

It was then that the defendant expressed surprise, and rather upbraided the company for allowing the grantee to gather the crops and appropriate the proceeds, and told them about the nature of pineapple property as likely to deteriorate in value.

The briefs of the learned solicitors have dealt at great length with the law relative to the right of the mortgagee to look to grantee of the mortgaged premises, where the deed to him recites the existence of the mortgage and a recitation in the conveyance that such vendee assumes

its payment. This question is not necessarily involved. It is a vexed problem, as was said by MR. JUSTICE GRAY in Union Mut. Life Ins. Co. v. Hanford, 143, U. S. 187, 12 Sup. Ct. Rep. 437: "Few things have been the subject of more difference of opinion and conflict of decision than the nature and extent of the right of a mortgagee of real estate against a subsequent grantee, who by the terms of the conveyance to him agrees to assume and pay the mortgage."

The answer of the defendant does not set up the fact that by reason of the conveyance by him to Mrs. Bray and the recitations therein contained, that she became the principal and he surety for the payment of the debt, and that by reason of the unauthorized extensions he became discharged. It does set up the fact that it was agreed and understood between the defendant and his grantee that such grantee "should assume and pay off the mortgage, when due," and further stated that complainant "agreed to look to the" said grantee for the "payment of the mortgage."

The record does not show any such an agreement in express terms.

We have already noted that the sufficiency of this answer has not been questioned or tested in any manner. The answer does set up as a defense, against any deficiency judgment, the facts and circumstances and the course of dealing between the company and the vendee of the defendant, which were over the objections and against the expressed wish of the defendant, and while the record does not disclose any direct request, in positive terms, to foreclose the mortgage, it is bristling with abundant evidence of the various, continued and repeated extensions, directly opposed to the wish and interest of

the defendant, arbitrarily exercised by the company, culminating in the depreciation of the mortgaged property.

It cannot be said that it was encumbent on the defendant to have used any precise language or certain form of expression to indicate his wish or request that the company foreclose.

The repeated protests of the defendant to the company against extensions from the very first, and the pointing out of the danger of loss by the depreciation in value of the mortgaged security, and more especially when associated with the disclaimer by the defendant of liability by reason of the making of the extensions, were tantamount to a *request* to foreclose. It certainly shows that he did not assent.

The case of Shepherd v. May, 115 U. S. 505, 6 Sup. Ct. Rep. 119, has been cited. This case is clearly distinguishable from that in many respects. First, in the case cited the grantee *did not agree* to assume payment; second, no showing was made that he did not assent to the extensions. This cited case rather indicates that if there had been proof that there was no assent to the indulgence and proof of the assumption, the ruling might have been otherwise. Here we have not only proof that defendant *did not consent* to continuance, but abundant proof that he protested against indulgence.

What this court is called upon to determine is, "Has this mortgagee so dealt with the vendee of the mortgaged premises that he can come into a court of equity, under the facts and circumstances disclosed by this record, and demand a deficiency decree against the mortgagor?"

Mr. Jones, in his work on mortgage foreclosure, Sec. 742, says: "If the mortgagor request the mortgagee upon

the maturity of the mortgage to foreclose it, on the ground that the premises are then sufficient to satisfy the mortgage, but might depreciate so as to become inadequate, the mortgagor will not be liable for a deficiency which occurs through the mortgagor's neglect to comply with the request."

Counsel for appellant in his brief calls attention to what we have quoted above from MR. JONES and says that appellee's solicitor did not "quote all of the law as laid down by MR. JONES, and he refers to the succeeding paragraph by MR. JONES, where he said: "But the mere neglect of the holder of a mortgage to enforce it when he has not been requested," etc., will not discharge the mortgagor. This statement in no manner qualifies what is stated in the previous paragraph, for it is to be noticed that the statement is "The mere neglect, when he has *not been requested*" to foreclose.

Under Equity Rule No. 89, above cited, the history of and effect thereof, is set out at some length in the case of Snell v. Richardson, *supra*.

Has a mortgagee, in a mortgage foreclosure, where the mortgaged property did not sell for sufficient sum to satisfy the decree, the unqualified and absolute right to demand that a decree be rendered in his favor against the mortgagor "for any balance that may be found to be due to the plaintiff, over and above the proceeds of sale or sales," or, does such right depend on the facts and circumstances in each case, and that such "a decree may be rendered" when those facts and circumstances, in the sound discretion of the chancellor, justify it?

In discussing our rule above noted, this court in the case of Etter v. State Bank of Florida, *supra*, said: "The

power vested in the Federal Courts by the rule (Federal Court Rule) is a discretionary one and may be exercised or not as the court deems best. Phelps v. Loyhed, 1 Dill (U. S.) 512." Fed. Cas. No. 11,077.

We have noted that the rule referred to is Rule 92 of the Supreme Court of the United States, but the Supreme Court of Florida, in adopting Rule 89 of Circuit Courts in Equity Actions, "followed closely the language" of Rule 92 of the Supreme Court of the United States, and why should it not receive the same construction?

From the record, it has not been shown that the chancellor committed any error in refusing the application for deficiency decree, and the order appealed from should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the order herein be, and the same is hereby; affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.