G. W. Bailey and Nina Mae Bailey, his wife, et al., *Appellants,* vs. Alice F. Inman, unmarried, et al., *Appellees.*

140 So. 783.

Division B.

Opinion filed April 15, 1932.

Petition for rehearing denied May 24, 1932.

2

*G. P. Garrett, Huffaker & Edwards* and *Robert T. Dewell*, for Appellants;

*McKillop & Hamilton*, for Appellees.

DAVIS, J.—This is a case wherein the appellants, as complainants below, filed a bill in the Circuit Court of Polk County to restrain the further prosecution of certain common law actions instituted in the Circuit Court of that County by Helen I. Smith and Alice F. Inman as administratrices of the estate of S. C. Inman, deceased, against G. W. Bailey, Charles G. Somers and H. O. Estes. These suits were to recover a judgment on certain promissory notes, signed by G. W. Bailey, Charles G. Somers and H. O. Estes, which were made payable to S. C. Inman, deceased.

Temporary injunctions were granted, but on final hearing after answer and testimony, the court entered a final decree finding the equities with the defendants. The appeal taken is from that final decree.

The facts are, that S. C. Inman in his lifetime conveyed by warranty deed to G. W. Bailey, Charles G.

Somers and H. O. Estes, certain lands in Polk County. The purchase price was $9,000.00 cash and $42,000.00 in deferred payments secured by a mortgage. The deferred payments were evidenced by promissory notes, each signed by Bailey, Somers and Estes, payable to Inman. To secure these notes, the makers executed a mortgage to Inman, on the land purchased.

Contained in the mortgage was a release clause which reads as follows:

"Lots of platted size not exceeding sixty by one hundred and fifteen feet (60x115) to be released from time to time on payment by mortgagors of five hundred ($500.00) dollars. The accumulated fund arising from such released payments, to be applied to principal notes as same mature or call for payment. No interest to be allowed on such fund during interim between time of payment and application of such fund in payment of principal notes as they are called for payment."

On September 18, 1925, the purchasers, Bailey, Somers and Estes, conveyed the mortgaged property to one P. Campbell, by warranty deed. This deed contained a provision as follows:

"This deed is subject to taxes for the year 1925, and also subject to one certain mortgage upon the premises in favor of S. C. Inman for $42,000.00 (forty-two thousand dollars) payable in ten semi-annual payments of Forty-five hundred ($4,500.00) dollars each for the first four payments of which the first is due January 10, 1926, and then Four Thousand ($4,000.00) dollars each for the next six payments, each payment being evidenced by a note dated July 10th, 1925, and bearing interest at the rate of eight per cent per annum, interest payable semi-annually, said mortgage and notes being written payable on or before maturity dates, said mortgage also contains a clause whereby upon the payment of $500.00 one lot of Bonita Heights Subdivision may be released from the operation of the said mortgage, all the lots in this subdivision being

subject to this clause, this money to be applied to the payment of the next note due. This deed is subject to the above and all the provisions of this mortgage, all of which the parties of the second part agree to assume and pay.''

While Campbell was in default in his payments under the Inman mortgage, partial releases were made by the mortgagee to ten lots embraced in the mortgage. These releases, it appears, were executed by Inman's administratrices after his death, which occurred in August, 1927.

Appellant's contention on appeal here is, that appellants having become sureties on the notes sued on, the release by Inman's administratrices from the mortgage security of these ten lots, coupled with an alleged extension to the grantee-assumer Campbell of the time for payments under the mortgage, without previous notice to Baily, Somers and Estes, the original mortgagors, operated to release and exonerate them as sureties on the notes sued on in the common law suit sought to be enjoined. The extension relied on as a discharge, is alleged to have been made by Inman, the mortgagee, in 1926, after the time it is claimed that Bailey, Somers and Estes had changed their status from that of makers of the notes, to sureties.

The promissory notes thus asserted to have been released and exonerated, were signed by Bailey, Somers and Estes, as makers. And when signed, they each contained a provision which reads as follows: ''And each of us, whether maker, surety, guarantor or endorser hereby severally waives homestead exemption, presentment and demand for payment, and notice of non-payment at maturity, and consents that this note, or any part hereof, may be extended without further notice.''

The Chancellor held that no equitable ground had been established for enjoining the actions at law against the

makers of the notes, so the bill of complaint was accordingly dismissed.

We are of the opinion that there was no error in this decree.

While a court of equity will not enjoin legal proceedings when the law court is competent to adjudicate upon proper pleas in the legal action, the matters presented to the equity court as a ground for injunction (Garrett v. Phillips, 101 Fla. 426, 134 Sou. Rep. 231), the bill of complaint in the present proceeding presented no case falling within this rule. On the contrary, the bill here undertook to set up certain rights inuring to the appellants as sureties, with the corresponding equitable right which they claimed to exist, to have equitable protection as such.

The prayer of the bill was not merely defensive against the prosecution of the law cases, but was affirmative in character. To have granted it, would have been beyond the province or powers of a court of law. The court of law could only have sustained a legal defense to recovery without granting the affirmative relief sought by the equitable bill. For this reason, the bill of complaint for receiver, injunction, accounting, exoneration, reimbursement, contribution and subrogation was properly founded in equity, and was not within the rule of the case above referred to. See Hayden v. Thrasher, 18 Fla. 795; West v. Chasten, 12 Fla. 215. Pepple vs. Rogers, et al., decided at the present term.

But as to the merits of the case as shown at the final hearing, we are of the opinion that the decree was properly rendered for the defendants.

While the grantee of mortgaged land, assuming an existing mortgage thereon, becomes, as to the mortgagor, the principal debtor, and the mortgagor becomes a surety as to him, the *mortgagee* may treat both mortgagor and grantee of the mortgaged premises as principal debtors.

It is only when the mortgagee, by his dealings with the grantee, so recognizes the grantee *alone* as the principal debtor, that he thereby precludes himself from procuring a personal judgment against the mortgagor as well. Slottow v. Hull Investment Co., 100 Fla. 244, 129 Sou. Rep. 577.

While the principles of estoppel are applicable to such a situation, as they may be in particular cases (Realty Mortgage Co. v. Moore, 80 Fla. 2, 85 Sou. Rep. 155), it was said with reference thereto, in Slottow v, Hull Investment Co., *supra:* "To create. an estoppel against the mortgagee, there must be a valid and binding agreement between the mortgagee and grantee, based upon a sufficient consideration, and materially inconsistent with the terms of the original obligation. *In short, the new transaction must amount to a novation between the mortgagor and the grantee."* (Emphasis ours). See 100 Fla. text page 253, 129 Sou. Rep. text page 581.

In the case at bar the mortgagee merely acquiesced in recognizing the grantee-assumer's written request in the form of a letter stating that he should "like to have an extension of this for six months provided we pay the interest promptly."

This request was granted, but on *condition* that applicant pay interest on the extension at eight per cent, in addition to the interest accruing on the original due dates of the principal notes. By no conception of the term can it be held that this grant of "extension" contained in the letters passing between Campbell and Inman amounted to a "novation" such as has been held necessary to work the release of a mortgagor who was originally maker of notes secured by the mortgage, even though his status may have been converted by operation of law into that of a surety on the notes only.

Strictly speaking, there is no relation of principal and surety created as to the mortgagee. This is so because

the mortgagee in every case is entitled, if he wishes to do
so, to treat both his mortgagor and his mortgagor's
grantee-assumer as principal debtors. And he may have
a personal decree against both or either, at his election.

It is therefore only by *election,* express or implied, to
deal with the grantee-assumer *alone,* that the mortgagee
may by his conduct preclude himself *on equitable prin-
ciples* from further holding the mortgagor.

This, as has been said, is accomplished only by what
might in law be held to be a "novation" between the
mortgagee and the grantee-assumer, and not by such
conduct as would ordinarily operate as a discharge be-
tween an obligee and his surety. This follows, because
both the mortgagor and his grantee-assumer remain
principal debtors to the mortgagee, until by the mort-
gagee's own election, or inequitable conduct, the mort-
gagee changes that relation to something else.

To constitute a "novation" which will discharge the
original debtor from the obligation of his notes to his
mortgagee, there must have been a mutual agreement, ex-
press or implied, between all the parties concerned. It
must be for the discharge of the valid, subsisting obliga-
tion of the makers on the notes, by the substitution of a
new valid obligation on the part of the grantee-assumer
of the mortgage debt in lieu of that of the original mort-
gagors. Such might be the necessary effect of a new
contract of extension of payment by which the mort-
gagee, with knowledge of the relation existing between
the mortgagor and his grantee, extended the time for pay-
ment beyond that of the original contract by a valid
agreement between himself and the grantee, based upon
a sufficient consideration, without consent of the mort-
gagor or waiver of his right to exoneration. But no
such novation is made to appear in this case. Nor does
it appear that the mortgagors in anywise changed their
position in reliance upon an election by the mortgagee

to look to the grantee-assumer alone for the debt. There is nothing shown therefore which can work an equitable estoppel against the mortgagee who must be shown to be now assuming a position inconsistent with his previous status, *to the mortgagors' prejudice.* Slottow v. Hull Investment Co., *supra.*

It is not to be doubted, however, that the mortgagee may, by his dealings with the purchaser and mortgagor, recognize the former as the principal debtor, and the latter as surety toward himself, so as to preclude any *material* alteratiou of the mortgage contract, or a material release of the mortgaged property, without discharging the mortgagor-surety from liability. Jones on Mortgages, 7th Ed: Vol. 2, Sec. 741, page 145; 41 C. J. pages 733, 734; Realty Mortgage Co. v. Moore, 80 Fla. 2, 85 Sou. Rep. 155. But to have such effect, the release of the mortgaged property must have been made by the mortgagee without the mortgagor's assent, *and to his prejudice.* It is the principle of estoppel which is mainly applicable to such a situation.

As to the releases shown in the case at bar, it appears that the release clause incorporated in the original mortgage by which the appellants were bound, and which the mortgagee's grantee assumed, contemplated releases of the character which the evidence in this case shows to have been made.

Agreements or covenants in a mortgage for releases of the kind here involved, are for the benefit of the owner; they affect the title and hence affect the estate of the holder and are therefore a benefit which passes with the land to which they are incident, unless the express agreement is properly construed otherwise. Such provisions are manifestly inserted in the mortgage with reference to the sale of the lots, when platted, to different parties and to facilitate such sales. Such covenants must be construed in connection with the other provisions of

the mortgage, in the light of the manifest purpose which they are designed to serve. Unless there is language in the contract expressly limiting the right to secure releases under such a clause to a period anterior to the maturity of the debt, the right is generally held to continue to exist, at least until foreclosure proceedings are instituted. The reason advanced for this rule is that if the mortgagee is paid his proportionate share of the debt for the property released, his remaining security would be just as ample as if the release had been demanded before default.

While there is authority to the contrary, the foregoing seems to be the prevailing and better reasoned rule, to which we are inclined to give our approval. A contrary holding must inevitably work harshly against purchasers from mortgagors, and defeat the very purpose for which covenants of this character are made. See Vawter v. Crafts, 41 Minn. 14, 42 N. W. 483; St. Louis Union Trust Co. v. Chicot Cotton-Alfalfa Farm Co., 127 Ark. 577, 193 S. W. 69; Lane v. Allen, 162 Ill. 426, 44 N. E. 831; Clark v. Fontain, 144 Mass. 287, 10 N. E. 831; Taylor v. Carter, 211 Mich. 365, 178 N. W. 712; Commercial Bank v. Hiller, 106 Mich. 118, 63 N. W. 1012; Sacramento Suburban Fruit Lands Co. v. Whaley, 194 Pac. 1054, 50 Cal. App. 125; State Mutual Bldg. & Loan Ass'n v. Millville Imp. Co., 74 N. J. Eq. 721, 70 Atl. 300.

Whether or not partial releases can be insisted on after the debt is in default, depends upon the interpretation of the agreement for releases, or the construction placed upon them in particular cases by the Court. We are unable to say in the particular case we are now considering that the release clause here involved is clearly to the effect that partial releases after default are unauthorized.

Furthermore, there is evidence to the effect that the granting of the partial releases made after default was

with the knowledge and consent of the mortgagors, by which they would be bound in any event.

If, as we have held, the covenant for partial releases contained in the mortgage, can be properly construed as a covenant running with the land which inured to the benefit of Campbell as grantee of the mortgagors, Inman, the mortgagee, was bound by the release covenant to grant such releases upon the payment of the sums contracted for. This benefit was available to Campbell, the mortgagors' grantee, even though there may have been a default in some of the payments required by the obligation, since there is nothing in the release clause which can be held to limit the time of procuring such releases to a period prior to default.

Such being true, the execution and delivery of partial releases by the mortgagee to the grantee-assumer of the mortgage, did not affect or prejudice the rights of the mortgagors as sureties. Nor were they entitled to claim discharge and exoneration from their obligations by reason thereof.

Waiving aside other questions as to the alleged extension of time for payment, Bailey, Somers and Estes by their written agreement contained in their notes, expressly consented to such an extension of the time for payment. Considering them as sureties only, such consent is sufficient to prevent their release by reason of the alleged extension made, since a provision of this kind contained in promissory notes is obviously inserted in the notes to prevent the release of any of the parties to them by reason of the creditor's leniency toward his debtor in extending the time for payment. Clauses of this kind have been properly held to refer to an extension of the time of payment to anyone or to anybody liable on the note. This is so because the purpose of such clauses is to enable the holder of the note to protect his rights against other parties, while being merciful to his debtor. Young v. Brown, 77 Colo. 53; 234 Pac. 163.

It follows from what we have said that the equities were properly found for the defendants in the court below and that the final decree appealed from must be affirmed.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND BROWN, J., concur in the opinion and judgment.

ELLIS, J., not participating.

### ON PETITION FOR REHEARING.

PER CURIAM.—In this case appellant has filed a petition for rehearing which has been carefully considered. We find nothing presented thereby to warrant or require a rehearing. The language of the original opinion would probably have been more aptly phrased had we said in next to the last sentence of the last paragraph of the opinion: "Clauses of this kind have been properly held to refer to an extension of the time of payment to anyone or to anybody liable to being held for payment of the note," instead of "anyone or anybody liable *on* the note", so the opinion will be amended so as to change the language to the effect just stated, and the petition for rehearing denied.

Rehearing denied.

BUFORD, C.J., AND WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., not participating.