Joseph G. Slottow, as Ancillary Administrator of the Estate of Ferdinand Becker, deceased, *Plaintiff in Error*, v. Hull Investment Company, *Defendant in Error*.

Division B.

Opinion filed July 23, 1930.

*Callaway & Burruss,* of Lakeland, and *Slottow & Leviton,* of Chicago, for Plaintiff in Error;

*McKay, Withers & Ramsey,* of Tampa, and *Edwards & Cutts,* and *Norman S. Stone,* of Lakeland, for Defendant-in Error.

STRUM, J.—Ferdinand Becker, now deceased, executed a series of promissory notes dated September 15, 1925, payable to the order of Hull Investment Company, plaintiff

below. Payment of these notes was secured by a mortgage on real estate, also executed by Ferdinand Becker, in the conventional form. Interest was payable on the notes semi-annually, and the mortgage contained the usual acceleration clause providing that the mortgagee, at its option, might declare the entire principal sum due upon failure of the debtor to pay the interest within thirty days after it became due.

Thereafter Zecker conveyed the mortgaged land to Hugh White, who in turn conveyed the same to H. A. Stahl and associates. Each of the grantees expressly assumed and agreed to pay the indebtedness secured by the mortgage.

The principal of one of the notes of said series became due on September 15, 1926, and not being paid, the payee on December 23, 1926, instituted an action at law upon that note. The principal of another of said notes became due on September 15, 1927. That note not having been paid, the payee on June 21, 1928, instituted its action at law thereon. Pleas were filed in both actions, to which demurrers were ultimately sustained, and final judgment upon demurrer was entered in favor of the plaintiff in both actions. Both Judgments are now before us upon writ of error, and as the same contentions are raised in each case they will here be disposed of together.

The defense interposed by the defendant Becker, and now by his administrator, is that upon the sale of the mortgaged land and the assumption of the mortgage debt by the grantee, the last grantees became the principal debtors, and the original mortgagor, Becker, a mere surety, and that the mortgagee, the plaintiff in these actions, recognized the last grantees as principal debtors by dealing directly with them in granting an extension of time for payment of the mortgage debt, without Becker's consent, thereby discharging Becker as surety from further personal liability.

The transaction between the mortgagee and the last grantees upon which Becker's claim of discharge rests, is alleged in the pleas to be in substance as follows:

Semi-annual interest became due on the notes on March 15, 1926, and was not paid. Thereafter the mortgagee elected to declare the entire sum due, and commenced foreclosure. On May 21, 1926, a purported agreement was executed between the mortgagee, Hull Investment Company, and some of the last grantees, referred to as Stahl and associates, whereby said grantees agreed to pay the past due interest and further agreed to properly cultivate the mortgaged land, which consisted of an orange grove, by pruning, spraying, and fertilizing the same, failing in which the mortgagee at its option might enter the property for the purposes just stated, and any amount expended by the mortgagee for these purposes should constitute a lien on the property. The mortgagee agreed "to discontinue the foreclosure action which it had started" on the mortgage above referred to. The said mortgagee agreed to do nothing more, so far as the terms of the instrument relied on by the defendant disclose. Becker alleges in his pleas that the mortgagee gave him no notice of its election to accelerate the due date of the principal, but that notice was given only to Stahl and associates, the last grantees. The pleas allege that the mortgagee, Hull Investment Company, agreed that it "would so extend the said indebtedness as to bring about its maturity on the same dates theretofore provided for in the notes and mortgage, and providing for an earlier maturity under certain conditions not originally set forth in said mortgage," but the agreement which is attached to and made a part of the pleas contradicts that averment and discloses that the mortgagee promised only "to discontinue the foreclosure action which it had started on" the mortgage in question. The pleas further allege that at the time the Hull Investment Co. "extended" the time of payment in manner

aforesaid, the mortgaged land was of sufficient value to discharge the entire indebtedness, but that it had since depreciated in value so as to be insufficient for that purpose. The contention of the defendant is that the transaction just described between the mortgagee and the last grantees was a recognition by the mortgagee of the status of surety on the part of Becker, the original mortgagor, and the acceptance of the last grantees, Stahl and associates, as principal debtors, and that the dealings between the mortgagee and the last grantees amounted to such an extension of time of payment as would discharge Becker as surety he not having assented thereto.

It is now well established that a grantee who purchases mortgaged land from the mortgagor and assumes and agrees to pay the mortgage thereon becomes, as to the mortgagor, the principal debtor and the mortgagor a surety. Brownson v. Hannah, 93 Fla. 223, 111 So. R. 731; Ackley v. Noggle, 97 Fla. 640, 121 So. R. 882; 2 Jones on Mortgages (8th ed.) Sec. 920. See also note 23 A. L. R. 439.

There is, however, a marked diversity of judicial opinion as to the effect upon the rights of the mortgagee of the relation thus created between the mortgagor and his grantee. By some courts it is held that the relation is binding upon the mortgagee from its inception. Other courts take the view that the mortgagee is not affected in any event, even though the latter disregards the mortgagor in subsequent dealings with the grantee.

The doctrine which commends itself to us as sanctioned by reason as well as by the present weight of authority lies between the two extremes just stated. For one reason or another, the courts are gradually uniting upon the doctrine, which we here adopt, that the relation of principal and surety between the mortgagor and his grantee, created in the manner above stated, does not in and of itself involve the mortgagee in its legal effects. His rights remain un-

changed, unless by his voluntary agreement, or by his dealings with the grantee, the mortgagee in effect accepts the grantee alone as the principal debtor or estops himself to further assert a personal liability against the mortgagor. Until the mortgagee thus recognizes the grantee alone as the principal debtor the mortgagee may treat both the mortgagor and the latter's grantee as principal debtors, and may have a personal decree against both or either, the obligation of the grantee being an additional obligation of which the mortgagee may avail himself or not, at his election. The mortgagee may sue the mortgagor alone, or may accept the grantee's assumption of the debt and may bring his action against the latter. Realty Holding Company v. Noggle, 97 Fla. 640, 121 So. R. 883, was such a case, the mortgagee suing the grantee at law. The trial court sustained a demurrer to the declaration, which order was reversed by this Court, without opinion, upon authority of Ackley v. Noggle, 97 Fla. 640, 121 So. R. 882. See also Lowry v. Hensall, 127 Atl. R. 219; Note 21 A. L. R. 403-531; 41 C. J. 743, 750. Tuttle v. Jockmus, 138 Atl. R. 804; 19 R. C. L. 374.

The sale of the mortgaged property is a transaction wholly between the mortgagor and his vendee, solely for their advantage. The mortgagee has no voice in its making and is powerless to prevent it. The agreement of assumption between the mortgagor and his vendee is, as to the mortgagee, *res inter alios acta*. The mortgagee, therefore, is not bound by a contract to which he is not a party. Moreover, a primary debtor is not converted into a surety and his liability altered to conform to the latter status, by the mere promise of a third party to pay the debt, a transaction to which the creditor is not a party. To the creditor such a transaction is cumulative rather than substitutional. A mortgagor can not thus compel his creditor to accept a substituted primary debtor, or to release any security he al-

ready holds. There can be no change in the relation between mortgagor and mortgagee, which can affect the mortgagee's rights, without the assent of the latter, express or implied. The mortgagee need not recognize the vendee unless he so lects. He need surrender no rights against the mortgagor unless he so elects.

By his dealings with the grantee, however, the mortgagee may recognize the grantee alone as the principal debtor, and thereby preclude himself from securing a personal judgment against the mortgagor. Even though the mortgagee is not contractually bound by the contract of assumption between the mortgagor and his grantee, it by no means follows that the mortgagee, after learning thereof, may enter into new or inconsistent relations with the grantee in disregard of the rights of the mortgagor. The mortgagee may enforce his rights as they originally exist, but if, with knowledge of the relationship between the mortgagor and his grantee, the mortgagee enters into a new contract with the grantee which materially varies the original obligation, he must respect the relation which he knows to exist between the mortgagor and the grantee with whom the mortgagee elects so to deal. If the mortgagee, with knowledge, elects to deal solely with the grantee, he does so at his peril. Even though the mortgagee may occupy such a relationship that in enforcing his own rights he may elect to treat both the mortgagor and his grantee as principals, nevertheless, if the mortgagee elects to deal with the grantee alone as principal debtor, it is his duty to observe the rights of the mortgagor, of which he has notice, if he expects to preserve the liability of the mortgagor.

It follows, therefore, that the mortgagee's rights are not affected merely by the agreement of assumption between the mortgagor and his grantee, to which the mortgagee was not a party. Nevertheless, when the mortgagee, with knowledge of the relation existing between the mortgagor and

his grantee, ignores the mortgagor and enters into a new and binding contract, upon a valid consideration, with the grantee alone, which has the effect of materially altering the terms of the original obligation of the mortgagor, or is materially inconsistent therewith, such action will operate to discharge the mortgagor from personal liability. Some courts rest the rule upon the doctrine applicable to the release of sureties, others upon principles of estoppel. But the majority of all courts agree that such action by the mortgagee releases the mortgagor from personal liability. For instance, it is very generally held by the courts which subscribe to the doctrine just stated, that if the mortgagee, with knowledge of the relation existing between the mortgagor and his grantee, extends the time of payment beyond that of the original contract by a valid agreement between himself and the grantee, based upon a sufficient consideration, such action operates to discharge the mortgagor from further personal liability, unless the mortgagor assents to the extension or waives his right to exoneration. Especially is this true when the mortgagor not only does not assent to the extension, but protests the same. The mortgagor is entitled to stand upon the terms of the original contract, which is the only contract he has made. 41 C. J. 719; 21 C. J. 1018.

This Court has heretofore recognized the principle of estoppel as applicable to such a situation. In Realty Mortgage Co. v. Moore, 80 Fla. 2, 85 So. R. 115, the sole question was whether the mortgagee was entitled to a deficiency decree against the mortgagor under the circumstances disclosed by the record. The mortgagor had conveyed the land to a grantee who had assumed the mortgage. The mortgagee, over the continued protests of the mortgagor, granted repeated extensions to the mortgagor's grantee covering a period of about eight years. The mortgagor's attitude during that period was tantamount to a continuing request to

foreclose. The mortgaged property was pineapple land, subject to rapid depreciation. During the period of such extensions· a freeze occurred which heavily depreciated the value of the security so that it was·insufficient upon sale to satisfy the mortgage debt, although it probably would have been sufficient if foreclosure had been brought at the time the debt was originally due, at which time the mortgagor vigorously protested against an extension. Under those circumstances, it would have been clearly inequitable to allow a deficiency decree against the mortgagor. It was held in that case that the mortgagee was estopped by his dealings with the grantee under the circumstances stated to· claim a deficiency decree against the mortgagor.

The numerous cases which support the doctrine herein adopted, and which establish it as the decided present weight of authority, as well as those cases adopting the contrary views, are collated in the notes to Insley v. Webb, 41 A. L. R. 271, et seq.; Peters v. Lindley, 41 A. L. R. 315; Fanning v. Murphy, 4 L. R. A. (N. S.) 666; Codman v. DeLand, 121 N. E. R. 14; Herd v. Tuohy, 65 Pac. R. 139; Gilliam v. McLemore, 106 So. R. 99, 43 A. L. R. 79; Braun v. Crew, 192 Pac. R. 531; Regan v. Williams, 84 So. W. R. 959, 105 A. S. R. 600; 19 R. C. L. 384, 41 C. J. 733, 785; 2 Jones on Mortgages (8th Ed.) Sec. 920, et seq. See also the related doctrines discussed in Miami Real Est. Co. v. Baxter, 124 So. R. 452.

Nothing herein said conflicts with Brownson v. Hannah, 111 So. R. 731, or with Ackley v. Noggle, 121 So. R. 882. Both of those cases were suits by the mortgagor-grantor against his grantee. What is said therein with reference to the existence of the relation of principal and surety is necessarily limited to that relationship as between the mortgagor and his grantee. In Brownson v. Hannah the point here under consideration is expressly reserved in the third

headnote, and in Exchange Bank v. Clark-Ray-Johnson Co., 116 So. R. 648, the question was left open.

To discharge the mortgagor, however, or to create an estoppel against the mortgagee, there must be a valid and binding agreement between the mortgagee and the grantee, based upon a sufficient consideration, and materially inconsistent with the terms of the original obligation. In short, the new transaction must amount to a novation between the mortgagee and the grantee. Mere indulgence granted by the mortgagee to the grantee without a consideration, or mere inaction or passivity, will not discharge the mortgagor. Kirby v. Bank, 18 So. W. R. (2nd) 599, 63 A. L. R. 1528.

Ordinarily, and in the absence of other circumstances, acceptance by the mortgagee from the grantee of payments on account of principal or interest at the rate fixed in the original obligation, and at or after the due date thereof, will not discharge the mortgagor, for such action is consistent with the original obligation as well as the continued liability of both the mortgagor and his grantee as principal debtors. Under those circumstances the mortgagee receives no more than he is entitled to under the original obligation. Parmelee v. Thompson, 45 N. Y. 58, 6 Am. Rep. 33.

Likewise, the mere waiver by the mortgagee of his optional rights under the acceleration clause of the mortgage, or his mere forbearance to further insist thereon after previously exercising his option to accelerate the due date of the principal because of the nonpayment of interest, standing alone, and with no other circumstances indicating prejudice to the mortgagor, will not operate to discharge the mortgagor where, as here, it does not appear that the mortgagor had relied upon such election nor changed his position by reason thereof and the mortgagee granted no extension beyond the original due date of the mortgage notes, but merely agreed ''to discontinue the foreclosure action which it has started'' on the mortgage in question.

In order to constitute an "extension" of the character hereinabove referred to there must be a valid agreement based upon a sufficient consideration which varies the original contract by postponing the time for its performance beyond that originally fixed by the terms of the obligation, and such extension must be one that ties the creditor's hands for a reasonably definite or ascertainable time. See note 41 A. L. R. 282; Regan v. Williams, 84 So. W. R. 959, 105 A. S. R. 600; Olmstead v. Latimer, 53 N. E. R. 5, 45 L. R. A. 685; Barden v. Sworts, 183 N. Y. Sup. 184, 21 R. C. L. 1020-1044; 41 C. J. 719; 32 Cyc. 206; Graham v. Pepple, 97 So. R. 180, 30 A. L. R. 1278.

The mortgagor contends that the alleged agreement between the mortgagee and the last grantees, made after the mortgagee had elected to accelerate the due date of the principal and had instituted foreclosure, was a new contract between those parties by which the due date of the debt was redetermined and automatically fixed to coincide with the original due date, and that such action under the circumstances amounted to an extension which discharged the mortgagor as surety.

The mere acceptance of past due interest is not a sufficient consideration to support a valid extension which will discharge a surety. Even if we assume that the purported agreement was binding and based upon a sufficient consideration in view of the grantees' undertaking to cultivate the grove, all that the mortgagee agreed to do was "to discontinue the foreclosure suit which it had started." That did not necessarily bind the mortgagee to postpone payment to the original due date of the note. Upon the breach of any other covenant of the mortgage, the mortgagee was free to again accelerate the debt.

. The action of the mortgagee in dealing with the grantee in the manner alleged in defendant's pleas amounts to no more than a mere forbearance on the part of the mortgagee

to further pursue its optional right to foreclose the mort-
gage—a mere indulgence which did not bind the mortgagee
for any definite time (see 21 R. C. L. 1020), nor did it ma-
terially vary the terms of the original obligation as to due
date or otherwise. The mortgagee was entitled to receive
the past due interest and dismiss the foreclosure. It did
no more than that. It did not tie its hands as to future
action for subsequent breaches, or otherwise extend the time
for payment. When the mortgagee made its election to fore-
close, the mortgagor may have become entitled to pay off
the debt and thereupon be subrogated to the rights of the
mortgagee as to the security. The mortgagor, however, did
not do that, nor did he otherwise change his position in re-
liance upon the mortgagee's election. It is true the pleas
allege that the mortgagor was given no notice of the election.
Even so, the mortgagee was entitled to waive its former
election, receive the past due interest and dismiss the fore-
closure, it not being shown that the mortgagor was relying
upon the election, nor had changed his position by reason
thereof, and nothing being done to alter the terms of the
original obligation, nor any security relinquished. Van
Vlissinger v. Lenz, 49 N. E. R. 422; Moore v. Russell, 65
Pac. R. 624. That transaction involved no new contract of
extension. It was but an optional election and a waiver
thereof, the other party not having acted on the election.
Moreover, the mere acceptance of past due interest from
the grantee and the dimissal of the foreclosure was not a
recognition of the grantee alone as principal debtor, as
that action was consistent with the terms of the obligation
executed by the mortgagor. While the election of the
mortgagee, by instituting foreclosure, to accelerate the due
date of the principal sum may be final and irrevocable
where, as in Kilpatrick v. Germania, 75 N. E. R. 1124,
2 L. R. A. (N. S.) 574, the debtor materially changed his
position to his prejudice in reliance upon such an election,

no such situation obtains here. Under some circumstances, an election once made cannot be waived, as for instance when the other party has acted on the election or would be prejudiced by the waiver. Van Vlissinger v. Lenz, 49 N. E. R. 422. There is nothing here, however, to show that this mortgagor relied upon the election or changed his position by reason thereof, nor that he insisted upon continuation of the foreclosure proceedings when he learned of the mortgagee's action. The facts here fall far short of those involved in Realty Mortgage Co. v. Moore, *supra*. The mortgagor not having relied upon the election nor changed his position by reason thereof, and not being prejudiced thereby, can no more insist upon his discharge by reason of the mere failure of the mortgagee to further pursue its election than he could insist upon such discharge by reason of the failure or refusal of the mortgagee to make such election originally, if the mortgagee acted in good faith and released no security.

The transaction alleged in the pleas did not amount to such a recognition of the grantee alone as principal debtor as will discharge the mortgagor from personal liability as a surety. It was consistent with the original obligation and with the continued liability of the mortgagor as a principal debtor.

Affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.