CORAL GABLES, Inc., Appellant, v. O. I. KLEAVELAND, Appellee.

No. 42886.

NOVEMBER 19, 1935.

REHEARING DENIED MARCH 13, 1936.

R. G. Remley, for appellant.

C. G. Lee, and Burnstedt & Hemingway, for appellee.

PARSONS, J.—This case was commenced and tried in the Hamilton county district court as an action in equity, an echo of the Florida "boom days," the events leading up to it having their inception in 1925.

The petition recites that the Coral Gables corporation was organized under the laws of Florida, and was the owner of a certain lot five in a part of the plat of Coral Gables; that on or about the 25th of September, 1925, the plaintiff entered into a

written contract, Exhibit A, with one Dodge, by which it was to sell to Dodge the lot in question for the sum of $6,775, and he agreed to purchase, and did purchase, the property for a part down and the balance in monthly payments, over a period of three years, as evidenced by his one certain promissory note for $4,556.25 of the same date as of the contract; that on the 25th of November the Coral Gables corporation transferred, assigned, and set over the note, Exhibit B, together with the contract for deed, Exhibit A, to one Richard K. Le Blond; and that on or about the 26th of March, 1926, he transferred, assigned, and set over the note, together with contract for deed, to Coral Gables, Inc.; that on or about the 17th of November, 1925, for a valuable consideration, Dodge made an assignment of contract for deed to defendant, Kleaveland, by which Dodge assigned all his right, title, and interest in the contract to Kleaveland, said assignment carrying a clause of assumption of liability by the purchaser under the terms of said contract for deed, by which defendant assumed all the terms, conditions, and stipulations in said agreement; and the defendant agreed to pay the balance of said purchase price remaining unpaid under said agreement for deed in the manner provided in said agreement, and agreed to perform all the terms, conditions, and stipulations in said agreement which said Dodge agreed to perform, and to indemnify Dodge against all claims, demands, and actions should Kleaveland fail to perform the conditions of said agreement, Exhibit A, said assignment being marked Exhibit E and made a part of the petition.

The petition further stated that Kleaveland had refused to go on, and still refused to pay the purchase price, and that the plaintiff had in all respects complied with said contract, its terms, and conditions, and offered to do equity and to comply with such orders and decrees of the court as should be required of it upon a trial of said cause.

The prayer of the petition asked that defendant be required to perform specifically the said contract by making the payments required by him to be made, and to in all other respects comply with the terms and conditions of said contract; and prayed for general relief.

The cause of action herein set up is a cause which might have been brought at law, really amounting to nothing so far as the liability of the defendant is concerned, except the right of

judgment against him for the amount due on the note of Dodge; or, in other words, the amount due on the contract of purchase. But the plaintiff saw fit to bring the suit in equity, perhaps with the view of avoiding a jury, and the defendant having failed to take steps to transfer the matter from equity to law, the case was tried as an equity case.

The contract, Exhibit A, by which it is claimed Dodge purchased the premises, as set out in the petition, recited that the premises were purchased for $6,775, that $1,518.75 was paid, and that the $4,556.25 note was taken to be paid in 36 consecutive monthly payments, the first payment to be due November 25, 1925. There were set out in the contract a great many restrictions on the use of the property, the contract covering 21 pages of the abstract, and it provided, amongst other things, that the failure to pay any one payment caused the whole amount to become due and payable at once, and to be recoverable by the Coral Gables corporation, together with costs and attorneys' fees; also that the contract should become void at the option of the corporation, and it should have the right to enter and take possession of the premises and sell the same, and that all payments made should be forfeited. The note given, Exhibit B, bore 7 per cent interest. The assignment of agreement for deed set out is known as Exhibit C in the record, and has thereon a place for the signature of the assignor and assignee, and witnesses for same. The consideration set out in the assignment from Dodge to the defendant Kleaveland was $10, and it also contained the following covenant:

"And the said Assignee herein hereby covenants and agrees with the assignor that he will pay the balance of said purchase price now remaining unpaid under said agreement for deed, and in the manner provided in said agreement, and will observe and perform all the terms, conditions and stipulations in the said agreement mentioned which are thereunder by the party of the second part thereon to be observed and performed, and will save harmless and keep indemnified the said assignor herein against all claims, demands, and actions by reason of the failure of the said assignee herein to observe and perform all the conditions of said agreement."

The Coral Gables, Inc., it would appear from the record, was a reorganization of the prior corporation, and was not or-

ganized as a corporation prior to March 9, 1929, when the arti-
cles were filed with the Secretary of State. The first corpo-
ration had title to the lot in question, amongst others, at the
time it is claimed that the defendant purchased the lot. It ap-
pears from the testimony without doubt, that the agreement, or
whatever it was between Dodge and the defendant, took place
November 5, 1925, for that is the date of a check for $911.25
given, or when it is claimed the original purchase of the lot was
made by the defendant; and that on November 16, 1925, the
defendant gave a check which purports to be on lot 5, block
152, for $1,276.25. It also appears that the defendant wrote
to the Coral Gables corporation on December 14, 1925, saying
"Enclosed find check with enclosed notice, December 14th. I re-
ceived the contract yesterday." And on December 28, 1925,
the defendant wrote the Coral Gables corporation, "I sent you
a check for $126.56, as monthly payment on contract assigned
to me by Lawrence E. Dodge on Lot 5, Block 152, Country
Club Section 6, of Coral Gables." It appears that the corpora-
tion telegraphed the defendant, who wrote a letter to the cor-
poration acknowledging receipt of the telegram and said: "I
will make a desperate effort in the next thirty days to meet the
payments. What would be the chances to sell through your re-
sale department and save a portion of our equity?" and asking
him to hold off thirty days. Again he wrote on August 22, 1926,
saying, among other things, "We have made payments on this
lot amounting to $2946.86, not including the interest we have
paid," and he desired that they take it back, saying, "So that
we could save a portion of what we have put in." Again, the
defendant wrote to the corporation from Adel, Iowa, on March
10, 1927, saying, "This lot was assigned to us by Lawrence
Dodge, salesman of your company. At one time there was a
chance to sell this lot at a profit, but he insisted us to hold on,
he said we would not have to make two or three payments be-
fore he would have it sold for us," and spoke about not being
able to carry it out.

It appears that the defendant made different payments on
the note to the corporation for the lot, the first being December
18, 1925, $126.56, followed by payments on January 13, 1926,
January 27, 1926, March 4, 1926, March 31, 1926, and May 24,
1926, each in a like sum.

So, there can be no question that the defendant made pay-

ments on his contract as called for by its terms to the Coral Gables corporation, after knowledge that the contract had been assigned to him by Mr. Dodge, because in his letter of December 14, 1925, he sends the $126.56 "as monthly payment on contract assigned to me by Lawrence E. Dodge," and in his letter of July 31, 1926, the defendant says, "I will make a desperate effort in the next thirty days to meet the payments. What would be the chances to sell through your resale department, etc." And on August 22, 1926, he says, "According to our last letter, I promised to do my best to make payments on our lot by the last of this month," and further said: "We have made payments on this lot amounting to $2946.86, not including the interest we have paid." Again, he says in his letter from Adel, March 10, 1927: "This lot was assigned to us by Lawrence Dodge, salesman of your company. At one time there was a chance to sell this lot at a profit, but he insisted us to hold on, he said we would not have to make two or three payments before he would have it sold for us." It conclusively appears, therefore, that defendant received from Dodge an assignment of the latter's contract with plaintiff, and necessarily had knowledge of the contents of said assignment, and, with such knowledge, ratified the terms of said assignment by treating the lot as his lot and by treating the assigned contract as his obligation.

On the part of the defendant, the defense set up was practically that Kleaveland never purchased the lot of Dodge. That in November, 1925, he was in Coral Gables, Fla., and while there was solicited by Dodge to advance him certain money for the purpose of enabling Dodge to hold and pay for a certain lot, which he showed to the defendant, and represented that he owned same; also representing that he owned a number of properties and lots in the city, and that he had purchased the lot near the proposed site of the University of Miami, but that he needed certain sums to make payments, and Dodge proposed to this defendant that if he would advance the necessary amount he would split the profits with Kleaveland, and the defendant relied upon the representations made by Dodge, and so advanced the money, at that time $911.25, and he claims further that these representations were a fraud, and that his purchase was void and not effective because Dodge had misrepresented

the matters in various ways. That the defendant relied upon the statements of Dodge.

The testimony in the case is largely irreconcilable with the belief that the parties on each side are testifying to the truth. On the part of Mr. Dodge, as principal witness for the plaintiff, and if his testimony is to be believed and taken as controlling, on the 5th of November, 1925, he sold to the defendant the lot in controversy, taking his check at that time for $911.25, and later on the 16th of November, 1925, took another check for $1,276.25, as a payment on the lot. That on the first check there had been written by Mr. Kleaveland the words, "Lt. 5, Blk. 152, C. C. 6," and on the second check Mr. Kleaveland wrote, "Lt. 5, Blk. 152, C. C. 6 Coral Gables." The testimony further shows that subsequently the Coral Gables, Inc., wrote defendant a letter July 22, 1932, demanding payment of the balance of the purchase price; that the deed was tendered; that the title shows it to have been at the time of the tendering of the deed in Coral Gables, Inc. It also shows that the defendant inclosed to the Coral Gables corporation the check in response to a letter from the corporation of December 14, 1925, saying, "Enclosed find check with enclosed notice of December 14th. I received my contract yesterday." Again on December 28th he wrote the corporation that on December 14th "I sent you check for $125.56 as monthly payment on contract assigned to me by Lawrence E. Dodge on Lot 5, Block 152 Country Club Section 6, Coral Gables," and, "Up to this time I have no receipt and I wish to know when the next payments are due. I hope to hear from you by return mail, including the receipt for the above mentioned payment." The testimony shows further without dispute that the payments called for in the note given by Dodge at the time of the purchase of the property were made by the defendant up to and including the payment due May 24, 1926, of $126.56 each, sent by him to the corporation.

Some of the checks of Mr. Kleaveland have been introduced in evidence. The two first checks undoubtedly bear the handwriting of Mr. Kleaveland; the notations which correspond to the description of the lot purchased. We arrive at the conclusion that the defendants are mistaken, at least the testimony of the defendant, his wife and daughter, cannot stand up against the other facts in the case; that either they are mistaken, or Dodge is mistaken. Every fact outside of the conversations,

practically, that took place on the day it was claimed the lot was sold, disputes the theory of the defendant. Therefore, we must find as a matter of fact, under the testimony, that Dodge and Kleaveland entered into an arrangement by which Dodge was to sell the lot in question to Kleaveland, and that hence Kleaveland would be held to pay out the remainder due on the purchase price of the lot under the showing made, and that Kleaveland, with the knowledge of these facts, kept sending in payments clear up to the May payment, to apply upon the balance due from him to the corporation.

It is unfortunate that persons will enter into such improvident contracts. Mr. Kleaveland was bitten by the bug of speculation that bit so many people back in 1925 and 1926, and along there, which resulted in the breakdown in 1929. That the defendant is liable on the balance due on the note given for the purchase price of the lot in question there can be no doubt, under the authorities. Our view of this finds support without dissent in the following cases: The plaintiff in its case introduced in evidence certain of the opinions of the Florida Supreme Court found in the Southern Reporter. Brownson v. Hannah, 93 Fla. 223, 111 So. 731, 51 A. L. R. 976; Wilson-Otwell et al. v. Ritch, 93 Fla. 698, 112 So. 547; Ackley v. Noggle, 97 Fla. 640, 121 So. 882; Slottow v. Hull Investment Co., 100 Fla. 244, 129 So. 577; Sebring Co. v. Hooker Hammock Farms, 101 Fla. 388, 134 So. 199; Marshall v. Hartman, 104 Fla. 143, 139 So. 441. These cases held that by the assumption by the grantee in a deed of mortgage indebtedness, the grantee thereby becomes, at least as between himself and the grantor, the primary obligor for the debt. This rule was followed in Sebring v. Hooker Hammock Farms. Where property is conveyed subject to a certain mortgage named in the deed, which the grantee "assumes", such term means the same as "assumes and agrees to pay", and amounts to a personal covenant to pay the mortgage. Slottow v. Hull Inv. Co. is the same in effect. Also Wilson-Otwell v. Ritch holds the same as to assignment of a contract when the defendant took an assignment of the contract with the consent of the plaintiff, and in consideration of such consent by the plaintiff agreed to pay the balance due for the property, which defendant acquired by reason of the transfer of the contract, this became the promise of the defendant to pay an obligation of the defendant, and was not a promise, contract,

or guaranty to become bound for or to pay the debt of another.

Without regard to the question whether or not this is to be controlled by the law of Florida or the law of Iowa, the Iowa authorities and the Florida authorities are in full accord on the questions involved herein. As to the assuming of mortgages, whether the contract expressly provides for the assuming of the mortgage or whether a deed or conveyance is accepted containing the clause binding the grantee to assume the mortgage, this amounts to an assumption of the mortgage. Grimes v. Kelloway, 204 Iowa 1220, 1221, 216 N. W. 953; Bennett Sav. Bank v. Smith, 171 Iowa 405, 152 N. W. 717; Gilmore v. Shearer, 197 Iowa 506, 197 N. W. 631, 32 A. L. R. 733; Boice v. Coffeen, 158 Iowa 705, 138 N. W. 857; Beeson v. Green, 103 Iowa 406, 72 N. W. 555; Senninger v. Rowley, 138 Iowa 617, 116 N. W. 695, 18 L. R. A. (N. S.) 223.

The same rule as to mortgages exists where one takes the assignment of a contract to purchase. Wightman v. Spofford, 56 Iowa 145, 8 N. W. 680, lays down the rule that the assignee of a contract for the sale of real estate by accepting the assignment becomes a party to the contract, and is personally liable for the purchase money then unpaid. Duntz v. Ames Cemetery Ass'n et al., 192 Iowa, 1341, 186 N. W. 443, holds that a city which, under a quitclaim deed, takes over the property of a private cemetery association and continues its use for cemetery purposes, thereby assumes the payment of deferred installments on the purchase price of said property. The same rule is laid down in McGregor Sub. Co. v. Mabie, 194 Iowa 1259, 191 N. W. 117.

Applying the principles laid down in these cases to the case before us, without regard to what were the arrangements originally between Dodge and Kleaveland, taking into view that the two checks handed to Dodge each contained a notation as to the lot in controversy, that the defendant in his letters stated he had received the contract, which could refer to nothing but the contract of assignment, or the contract from the Coral Gables corporation to Dodge, that he acted on it, that he paid the subsequent payments coming due, there can be no question that he made himself liable to carry out that contract, and these facts are conclusive evidence on that proposition. Therefore, for the reasons pointed out, the action of the lower court is reversed, and

the case is remanded to the district court of Hamilton county, with instructions to enter decree in accordance with this opinion for plaintiff. The plaintiff, if he so elects, may take judgment and decree in this court.—Reversed and remanded.

KINTZINGER, C. J., and ANDERSON, HAMILTON, DONEGAN, POWERS, and RICHARDS, JJ., concur.