JORGENSON, Judge.
Paint Fair Stores, Inc.,[1] entered into financing arrangements with Walter E. Heller and Company, plaintiff below, appellee here, which covered the inventory and fixtures of Paint Fair Stores, Inc. The collateral promissory note to Walter E. Heller and Company created a security interest in the inventory within the meaning of Section 679.102, Florida Statutes (1979).
In 1974, Heller and Company sought additional protection on the collateral promissory note and received from Donald Zucker-man, the then president of Paint Fair Stores, Inc., a collateral real estate mortgage which, by its terms, created an open-ended indebtedness in an amount not to exceed $150,000, and incorporated the collateral promissory note. In September, 1977, Donald Zuckerman executed a warranty deed to Continental Center, Inc., defendant below, appellant here.[2] Subsequently, Paint Fair Stores, Inc. filed under Chapter 11 of the Federal Bankruptcy Act and was ultimately adjudicated a bankrupt on December 5,1977. During the course of the bankruptcy proceedings, the secured creditor, Heller and Company, received the inventory of Paint Fair Stores, Inc. by way of an abandonment from the trustee. Heller and Company sold the assets and then brought a foreclosure proceeding against Continental Center alleging a deficiency on the collateral note and mortgage.
Continental Center defended by suggesting that it was a debtor entitled to notice within the meaning of Section 679.501(3)(b), Florida Statutes (1979). As a further defense, Continental Center maintains that the sale of the secured collateral was commercially unreasonable within the meaning of Section 679.504(3), Florida Statutes (1979).
The trial court found the note to be in default and granted the foreclosure. A deficiency in the amount of $87,654.09 was also found. In reaching its conclusion, the trial court found, as a matter of fact, that Continental Center is a successor in interest to the mortgagor, Zuckerman being the pri- or fee simple owner of the real property. We affirm in part and reverse in part.
Turning first to the notice issue, appellant’s reliance on Section 679.501(3)(b), Florida Statutes (1979) and Section 679.-504(3), Florida Statutes (1979) is simply misplaced. These provisions of the Uniform Commercial Code deal with the sale of personalty as collateral and do not effect Heller and Company’s rights as mortgagee. The sale of mortgaged property is a transaction wholly between the mortgagor and his vendee, solely for their advantage; the mortgagee has no voice in its making and is powerless to prevent it. Slottow v. Hull Investment Company, 100 Fla. 244, 129 So. 577 (1930). There can be no change in the relationship between the mortgagor and mortgagee which can effect the mortgagee’s rights without the assent of the latter, expressed or implied. A mortgagee need not recognize the vendee unless he so elects. He need surrender no rights against the mortgagor unless he so elects. Slottow, supra. Indeed, Section 679.102(3), Florida Statutes (1979) specifically excludes real property from the provisions of the Code. Thus, all that Continental Center received *753 by way of the conveyance was bare, legal title to the property in question, subject to the mortgage. 59 C.J.S. Mortgages § 389.
Continental is entitled, however, as a successor in interest, to litigate the commercial reasonableness of the sale of the secured collateral, particularly. where, as in this case, both mortgage and note were open-ended. Section 679.504(2), Florida Statutes (1979). The record reflects that, in order to effect the sale of the collateral, Heller and Company employed the services of Robert I. Glazer to conduct a retail liquidation sale. After making a preliminary analysis and conducting certain advertising, the retail sale commenced on March 2, 1978. By April 4, 1978, the sale had generated $95,562.82 in gross receipts. Up to that point in time the expenses of the sale were $69,639.98. According to the trial testimony of Heller’s representative, had the sale continued for another week, additional revenues would have been received and, had it concluded at that point, the loan would have been reduced by approximately $33,806.38.[3]
The sale, however, did not conclude, but continued for another month, which resulted in the cost of sale exceeding the value of the collateral asset. We cannot agree that this was commercially reasonable after Heller had notice from its own expert on April 3, 1978 that it had reached a point of no return. At that point, the sale of the collateral became commercially unreasonable. Bank of Oklahoma v. Little Judy Industries, Inc., 387 So.2d 1002 (Fla. 3d DCA 1980).
The judgment in amount of $87,654.09 is, accordingly, modified and reduced by $33,-806.09 to reflect a net deficiency of $53,-848.00. This cause is remanded to the trial court for further proceedings in accordance with the views expressed herein.

. Not a party to this appeal or the proceedings below.

. The record does not reflect whether or not Heller and Company was advised of the sale.

. The briefs and the record are in minor conflict on the exact amounts. We adopt the amounts reflected in Heller’s trial brief found at p. 109 of the record.